**Exhibit A**

Law Office of Mahir T. Sherif
MAHIR T. SHERIF, Esq. (SB# 135021)
3376 30th Street
San Diego, CA  92104
Ph: 619-297-4444
Fx: 619-297-4115

Attorney for Defendant, Nuradin Abdi

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
#### EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 2:04CR88 |
| Plaintiff, | ) (Honorable Algenon L. Marbley) |
| vs. | ) **DECLARATION OF NURADIN ABDI IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF DEFENDANT'S FIFTH AMENDMENT RIGHTS** |
| NURADIN ABDI, | |
| Defendant | |

I, NURADIN ABDI, hereby attest and declare the following as true:

1.  I, Nuradin Abdi, am the defendant in the above case.

2.  I have a high school education and for two years I studied business and economics at a university in Syria. I left school before completing the degree.

3.  I came to the United States to live in 1998.

4.  In April of 2003, I was contacted in person by an FBI agent. I was asked questions. I answered them and I allowed the agent to search my home in order to cooperate. I never heard from anyone from the FBI again until the day of my arrest. I believed that investigation was completely over and that my cooperation had allowed it to be easily addressed.

5.  I am an immigrant. The only understanding I had about American law when I was approached in April of 2003 and at the time of my arrest was that if I did not cooperate with the government, they would take my I-94 card away from me (and I would have to leave the United States).

DECLARATION OF NURADIN ABDI IN SUPPORT OF MOTION TO SUPPRESS
STATEMENTS IN VIOLATION OF DEFENDANT'S FIFTH AMENDMENT RIGHTS
Page 1 of 7                                                                 CR 2-04-88

6. On Friday, November 28, 2003, I was arrested.

7. At the time of my arrest, Robert Medellin came to me and told me I was under arrest for violating immigration laws.

8. I asked, "What kind of violation?"

9. He responded, "You will know about it."

10. The first place I was taken was downtown Columbus, to the FBI office.

11. Once in the office, Robert Medellin began talking first.

12. He told me that I had committed a lot of immigration violations. He told me that the violations would lead to deportation of myself and my family – my two children – would "go with me". I understood this to mean, that they would be deported as well. He then said the only way for me to get out was to cooperate with "those guys".

13. By "those guys" he meant the FBI agents who were sitting in the room with us.

14. Stephen Flowers of the FBI then began to question me.

15. He asked me about my background, about a prior investigation they had conducted with me, about my family, my travel and whether I knew of any threats against the United States. After he was through asking me questions, he commented to me "this is going to take a while".

16. I was then transported to the immigration building in Cincinnati, Ohio where I was kept in a cell.

17. While I was in the cell, Robert Medellin came to me and spoke with me. It was 12:00 noon and he was bringing me my lunch.

18. Agent Medellin told me the following: he had been working for ICE for 27 years; that an order had come from the government to take me out of the streets; that I had committed a lot of violations; that he had seen cases like this before and that I needed to cooperate with them. He also made comments about my children saying: that he knew I had children; he saw my daughter at my

house; that I need to be with my family; and that in order for me to be with them, I needed to cooperate.

19. I asked him, "What did I do?"

20. He said again that I had committed violations.

21. I asked, "Can I see them?"

22. He replied, "You are going to see them."

23. Agent Medellin then gave me my lunch and left me alone in the cell.

24. Later this same day, around 5:00 p.m. Agent Medellin came to me again. He commented to me that "it was going to be long hours"; that I needed to be patient; that if I wanted it over faster I had to cooperate.

25. I asked him "Cooperate about what"?

26. He replied, "We have some information."

27. I replied the only thing you have are my papers for my asylum.

28. I was eventually transported to the jail. The time when I was returned to the jail was approximately 7:00 p.m. At the jail I was kept in isolation.

29. The next morning, Saturday, November 29, 2003, I was picked up by Robert Medellin and Richard Wilkens. The time was approximately 11:00 a.m.

30. I was taken back to the immigration facility and put in a cell.

31. Around noon, I was taken out of the cell and taken to an office in the facility for questioning.

32. I was questioned by Richard Wilkens and Robert Medellin. They asked me about my legal status in the United States and about my wife. Richard Wilkens took out my immigration papers (my asylum application). He showed me these papers and began to ask me about the particulars in the application.

33. I answered his questions about my asylum application. I believed I was cooperating as they wanted, and I was doing so because I had been told this was my only way out.

DECLARATION OF NURADIN ABDI IN SUPPORT OF MOTION TO SUPPRESS
STATEMENTS IN VIOLATION OF DEFENDANT'S FIFTH AMENDMENT RIGHTS
Page 3 of 7                                              CR 2-04-88

34. Prior to this questioning by Richard Wilkens and Robert Medellin, I was not told "I had the right to remain silent", or that "I had the right to an attorney", or that "what I said could be used against me". I was not advised of my "rights" or asked to sign a waiver of my rights.

35. I was taken back to the cell and left there for about three hours.

36. At this time, Richard Wilkens came to the cell and said he wanted to know about "other things". He said, "We have a lot of information about you, and you are not telling us what we want to hear."

37. I asked again about the violations that I was alleged to have committed.

38. Finally, I said "What are you looking for?"

39. Before replying, Agent Medellin looked at Richard Wilkens and then looked back to me and said, "We want to know information about Iyman Faris."

40. I was taken back to the same office and then I was questioned about Iyman Faris. I discussed with the agents how I knew Iyman Faris.

41. This lasted approximately one hour.

42. They started to tell me that I was not cooperating with them, and if I wanted to go home, I needed to cooperate. They mentioned my children.

43. On this day, Robert Medellin also asked me "What do you think about the isolation?"

44. I was taken back to the cell again and around 10:00 p.m. in the evening I was brought out to the office again. Now, Stephen Flowers and John Corbin of the FBI were present.

45. Richard Medellin said you need to talk to us about what you know about Faris.

46. I replied that I was not there for that, I was there for a violation, and could I know what the violation was?

47. I then asked to make a telephone call to my family. I wanted to inform them I was not harmed. They did not allow me to make a call.

48. The questioning then continued until approximately 12:00 a.m.

DECLARATION OF NURADIN ABDI IN SUPPORT OF MOTION TO SUPPRESS
STATEMENTS IN VIOLATION OF DEFENDANT'S FIFTH AMENDMENT RIGHTS
Page 4 of 7                                                     CR 2-04-88

49. Thereafter, I was transported back to the jail where I remained in isolation.

50. The next day was Sunday, November 30, 2003.

51. They took me again from the jail to the immigration building. The time was approximately 2:00 p.m.

52. I was questioned by John Corbin and Stephen Flowers of the FBI. Richard Wilkens and Robert Medellin were present in the room.

53. Before this questioning began, the FBI Agents asked me to sign papers to "waive my rights". The agents stated to me that they wanted to ask me some questions. They did not state specifically what they were going to ask me about. They did not say they were going to ask me about criminal activity.

54. I believed my signing the "waiver of my rights" was cooperation. I had been told "if I cooperate then it will be much easier for me, and I would be going home". I believed that this was what they wanted from me in order for me to go home, to see and to talk to my family, to get this "done faster".

55. I was feeling very pressured at this time. I was in isolation now for three days. I had not spoken to my family. They had specifically denied me the right to call or see my family. I saw no one at the jail and I was not permitted to talk to anyone but these agents. I signed the waiver because of this pressure and because they were promising me that my cooperation would allow me to go home and see my family.

56. I understood that what I was cooperating with was "giving them information about Faris". This was my understanding, because this is what Agent Medellin specifically stated to me. This was the only specific statement I had as to what exactly they wanted from me.

57. I also believed what they had told me, "that if I cooperated, I would get to go home". I believed this because of all that had been stated to me. Before I was told they wanted information about Faris, they had only told me their concern with me was regarding immigration violations. They had never stated to me

DECLARATION OF NURADIN ABDI IN SUPPORT OF MOTION TO SUPPRESS
STATEMENTS IN VIOLATION OF DEFENDANT'S FIFTH AMENDMENT RIGHTS
CR 2-04-88

that they were investigating me for any criminal conduct. I never heard the word "criminal conduct" or "criminal activity" from them.

58. The pressuring and this questioning continued until late into that night.

59. I was taken back to the jail that night. I remained in isolation at the jail.

60. I was picked up at the jail the following day, Monday, December 1, 2003, in the afternoon.

61. I was again questioned by Stephen Flowers and John Corbin. Again, I was asked to "waive my rights". Again the agents did not state anything specific that they were going to ask me about. They did not state that they were going to ask me about criminal activity.

62. This same pattern of telling me they had more questions for me and asking me to "waive my rights" continued each time I was questioned. I was never told I was being questioned regarding criminal activity. I was never advised of anything specific about which they were about to question me.

63. I never understood the possible consequences of what I was signing, that these agents were looking for information against me that they could use against me.

64. Each waiver that I signed, I signed because of the pressuring of from the agents.

65. They way it was presented to me, was I had to either "sign and cooperate" or I may not see my family again and/or I and my family would be deported.

66. Each time I signed a waiver I did so, because I believed "it was my only way out" and my only way to ever see my family. As each day passed by, the concern of seeing my family was heightened, and thus the pressure was heightened.

///

///

///

I DECLARE under penalty of perjury of the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated: 05/26/05

By: _____

Nuradin Abdi

# Exhibit B

# ADVICE OF RIGHTS

Place _Cincinati, OH_
Date _11/30/03_
Time _10:40 pr_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _John Corbin_

Witness: _Flore, FBI Columbus_

Time: _11/30/03 10:45 pm_

0166

**Exhibit C**

0171

# ADVICE OF RIGHTS

Place _INS CINCINNATI_
Date _12/1/03_
Time _3:42 PM_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _John Corbin FBI Cincinnati_

Witness: _Stephe L. Flowers, FBI Columbus_

Time: _3:44 PM   12/1/03_

0171

FD-395 (Rev. 2-28-97)

# ADVICE OF RIGHTS

Place _FBI CINCINNATI_
Date _12/2/03_
Time _9:00 Am_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _John Corbin FBI Cincinnati_

Witness: _SA _____ FBI _____
_Stephen L. Flowers_

Time: _9:00 Am 12/2/03_

0182

## ADVICE OF RIGHTS

Place *KENTON COUNTY JAIL, KY.*
Date *12/3/03*
Time *3:08 P.M*

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _____ *Nuradin M. Abdi*

Witness: _____
*JOHN CORBIN  FBI CINCINNATE*
Witness: _____
*MIKE L. FLOWER  FBI Columbus MA*
Time: *3:09 PM  12/3/03*

0190

## ADVICE OF RIGHTS

Place _Covington, KY_
Date _12/06/03_
Time _3:07 pm_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _SA Stephen L Flowers FBI Columbus_

Witness: _SA John Corazn   FBI Columbus_

Time: _3:10 pm_

0203

# ADVICE OF RIGHTS

Place _Covington, KY_
Date _12/7/2003_
Time _3:7_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _[signature]_

Witness: _____

Time: _3:28 pm_

0211

# ADVICE OF RIGHTS

Place _Covington, KY_
Date _12/10/03_
Time _9:30 am_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _John Corbin FBI Columbus_

Witness: _Al Brown, FBI Columbus_
_Stephen L. Moan_

Time: _9:33 am_

0227

FD-395 (Rev. 2-28-97)

# ADVICE OF RIGHTS

Place _Circleville, OH_
Date _01/06/04_
Time _3:43 pm_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nuradin M. Abdi_

Witness: _SA Stephen L Flowers, FBI Columbus_

Witness: _____ FBI Columbus_

Time: _3:46 pm_

0255

0282

# ADVICE OF RIGHTS

Place _Circleville, OH_
Date _Jan. 15, 2004_
Time _2:34 pm_

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

_SUF_

Signed _Nuradin . M Abdi_

Witness: _SA Robert L Hilme, FBI Columbus_

Witness: _[signature]_

Time: _2:38 pm_

0295

## ADVICE OF RIGHTS

Place _Circleville, OH_
Date _02/17/04_
Time _3:25 pm_

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _Nurudin M. Abdi_

Witness: _____

Witness: _____ SA FBI _____

Time: _3:28 pm_

_JOHN CORBIN FBI COLUMBUS_

**Exhibit D**

U.S. Department of Justice

Immigration and Naturalization Service

**Warrant for Arrest of Alien**

Case No: CLE0411000134

File No. A075 613 050

Date: November 28, 2003

To any officer of the Immigration and Naturalization Service delegated authority pursuant

to section 287 of the Immigration and Nationality Act:

From evidence submitted to me, it appears that:

Nuradin Mahamoud ABDI

(Full name of alien)

an alien who entered the United States at or near Unknown place                on

(Port)

Unknown Date                is within the country in violation of the immigration laws and is

(Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and

Nationality Act.

By virtue of the authority vested in me by the immigration laws of the United States and the

regulations issued pursuant thereto, I command you to take the above-named alien into custody

for proceedings in accordance with the applicable provisions of the immigration laws and

regulations.

(Signature of authorized INS official)

RICHARD H. WILKENS

(Print name of official)

INTERIM RAIC

(Title)

---

**Certificate of Service**

Served by me at 550 Main St. Cincinnati, Ohio  on Dec 1, 2003        at 5-35 PM.

I certify that following such service, the alien was advised concerning his or her right to counsel and was

furnished a copy of this warrant.

ROBERT MEDELLIN

(Signature of officer serving warrant)

SPECIAL AGENT

(Title of officer serving warrant)

Form I-200 (Rev. 4-1-97)N

0741

# Exhibit E

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)

C____ J., WARDEN

(Name of Facility)  KENTON COUNTY JAIL
303 COURT STREET
CLE 98-5014
COVINGTON, KY  410110000

Please  [X] Detain   [ ] Release

| Date | Time |
|---|---|
| 11/28/2003 | |

Name of Alien
Nuradin Mahamoud ABDI

File Number
A075 613 050
Case No: CLE0411000134

| Age | Date of Birth (Mo./Day/Yr.) | Sex | Nationality | Foreign Address |
|---|---|---|---|---|
| 31 | 05/22/1972 | M | SOMALIA | KASABALARAE MOGADISHU, SOMALIA |

Type of Proceedings
Removal Proceedings

Signature of Officer Receiving Alien

REMARKS:

*SEGRECATION : NO CONTACT *

* NO TElephone communication, except with Legal counsel *
per FBI Request.

Signature of Officer Authorizing Action

MEDELLIN, Robert

| Title | Office |
|---|---|
| SPECIAL AGENT | C/N |

Form I-203 (Rev. 7-15-78) Y

UNITED STATES DEPARTMENT OF JUSTICE - Immigration and Naturalization Service

End of Exhibits