50 F.3d 11 (Table)
50 F.3d 11 (Table), 1995 WL 108988 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 50 F.3d 11, 1995 WL 108988 (6th Cir.(Ohio)))**

Page 1

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.
**UNITED STATES of America, Plaintiff-Appellee,**
v.
**Earl Louis GORDON, Defendant-Appellant.**
**No. 93-3836.**

March 14, 1995.

On Appeal from the United States District Court for the Northern District of Ohio, Eastern Division, No. 93-00011; David D. Dowd, Jr., Judge.

N.D.Ohio

AFFIRMED.

Before: JONES and BATCHELDER Circuit Judges; and GILMORE, District Judge [FN*]

GILMORE, District Judge.

**1 On December 2, 1992, officers of the Akron, Ohio Police Department arrested appellant Earl Louis Gordon on an outstanding state bench warrant. At the time of the arrest, officers found narcotics and a firearm on or near Mr. Gordon. Shortly thereafter, a federal grand jury returned a two-count indictment charging Gordon with being a felon in possession of a weapon and possession of cocaine base.

In the district court, Gordon moved to suppress the weapon and narcotics recovered at the time of his December 2, 1992, arrest. The court denied the motion in a Memorandum Opinion and Order. Although the court agreed with Gordon that the bench warrant authorizing his arrest was constitutionally deficient, the court held that the good faith exception to the warrant requirement "saved" the arrest and the attendant search.

On appeal, Gordon asserts that the district court erred in refusing to suppress the contraband recovered at the time of his arrest. For the reasons set forth below, we affirm the decision of the district court.

I

Prior to appellant's arrest on December 2, 1992, the Akron Police Department had received information to the effect that there was significant vehicle and pedestrian traffic at all hours of the night at 1128 Seventh Avenue, a house that appellant owned and in which he resided. Reports indicated that most "visitors" stayed at the house for only 2-3 minutes. Police surveillance confirmed these reports; in fact, numerous arrests for drug activities had been made at the location. In addition, a reliable confidential informant had reported that there was drug-related activity at the address. The informant further stated that he had the ability to purchase narcotics from appellant Gordon. The informant also advised police that Gordon carried a small handgun and illegal drugs on his person when he left his home, rather than leaving those items in the residence.

Using information obtained from one of appellant's prior arrests, members of the surveillance team were provided with appellant's name, physical description, and photographs of him. In addition, officers were advised that there was an outstanding bench warrant for appellant's arrest.

On December 2, 1992, members of the Akron Street Narcotics Unit had set up surveillance on appellant's house. The surveillance confirmed heavy pedestrian and vehicular traffic, with most visitors staying only a few minutes. After approximately two hours of surveillance, appellant Gordon unexpectedly left the house and began walking down Seventh Avenue. When Gordon left the house, detectives in an unmarked police car radioed this information to Detective John Bell and his partner, who were waiting nearby in a marked cruiser.

When appellant Gordon saw the marked police cruiser, he abruptly changed direction and hurried up to the door of the house located at 1080 Seventh Avenue. Detective Bell and his partner approached Gordon and ordered him off the porch. Gordon refused, and the officers were forced to physically remove him from the porch. After handcuffing Gordon, Detective Bell recovered a pill bottle containing cocaine from the pocket of Gordon's jacket. In addition, the officers recovered a loaded

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


GOVERNMENT EXHIBIT 9

50 F.3d 11 (Table)                                                                    **Page 2**
(Cite as: 50 F.3d 11, 1995 WL 108988, **1 (6th Cir.(Ohio)))

.38 caliber pistol from the ground, in an area where Gordon had been shuffling his feet. The officers arrested Gordon on the outstanding bench warrant and also charged him with carrying a concealed weapon and drug law violations. Shortly thereafter, a federal grand jury returned a two-count indictment against Gordon, charging him with being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1) and possession of cocaine base (crack) in violation of 21 U.S.C. § 844.

**2 Appellant filed a Motion to suppress the narcotics and firearm that were recovered following his arrest. Specifically, appellant argued that the arrest warrant authorizing his arrest was constitutionally deficient; therefore, the contraband found during the attendant search must be suppressed. The district court agreed that the warrant was deficient insofar as it was unsworn and contained other inaccuracies; however, the court denied appellant's motion to suppress, relying on the good faith exception to the warrant requirement.

In this appeal, appellant Gordon asserts that the district court erred in holding that the good faith exception applies in this case.

II

The arrest warrant that is the subject of appellant's constitutional challenge was issued under the following circumstances. In 1991, Appellant was arrested for permitting drug abuse in a vehicle (Count I); misrepresenting his identity (Count II); and driving without an operator's license (Count III) On January 22, 1992, Gordon pled guilty in Akron Municipal Court to Counts I and III, and Count II was dismissed. The municipal judge sentenced him to some jail time, a $100 fine, and 30 days of community service. With regard to the $100 fine, appellant was given a "Notice to Pay" form on the day of his plea and sentence (January 22, 1992). Appellant signed the form, acknowledging receipt of same, and was also given a copy for his records. Pursuant to the court's payment plan, appellant was ordered to pay $25/month beginning March 4, 1992. If appellant was unable to make the scheduled payment, the form advised him to appear in court on March 4, 1992, to request an extension. Appellant failed to pay or appear on March 4, 1992. This delinquency was not brought to the municipal judge's attention until April 30, 1992, at which time the court clerk's office sent Mr. Gordon's file to the judge's bailiff. [FN1] Upon receiving appellant's file from the clerk's office, the bailiff reviewed the file to

confirm the delinquency. As was his practice in cases such as this, the bailiff also contacted the Summit County Jail and Akron Correctional Facility to ascertain whether Gordon's failure to pay was due to his involuntary incarceration, which it was not. Thereafter, the bailiff wrote the words "bench warrant" on the top of the file, along with the date of his review, April 30, 1992. The file was then returned to the clerk's office, where a form affidavit and warrant were typed using the information contained in the file.

The affidavit supporting the warrant, which was typed by the clerk's office, indicated that appellant Gordon had failed to pay or appear on April 30, 1992. According to the bailiff, the appearance date was identified as April 30, 1992, rather than March 4, 1992, because, due to the *de facto* grace period, Gordon technically had until April 30, 1992 to make payment on his delinquent fine.

When the clerk's office completed typing the form affidavit, the file was returned to the bailiff, who again reviewed it for accuracy. Thereafter, he signed the affidavit, and forwarded the file to the judge, who signed the bench warrant. Contrary to language in the affidavit which states "[s]worn to and signed in my presence," the bailiff did not swear to the affidavit requesting the arrest warrant, nor did he sign it in the clerk's presence. [FN2] The affidavit and warrant were then returned to the clerk's office where it was signed by the clerk and filed in the warrant drawer.

**3 At the evidentiary hearing that was held in conjunction with appellant's motion to suppress, Detective Bell testified that he had not seen a copy of the affidavit and warrant prior to appellant's arrest. Instead, information regarding the existence of the warrant was obtained from a police computer check.

III

The Fourth Amendment to the United States Constitution provides, in pertinent part

... no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized

As a general rule, where a Fourth Amendment violation occurs, the exclusionary rule serves to preclude the use of physical evidence or statements obtained as a result of the constitutional violation. In other words, the exclusionary rule is a judicially created doctrine intended to secure Fourth

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

50 F.3d 11 (Table)                                                    **Page 3**
(Cite as: 50 F.3d 11, 1995 WL 108988, **3 (6th Cir.(Ohio)))

Amendment guarantees by denying to law enforcement officers the "fruits" of their unlawful conduct.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court sharply curtailed the use of the exclusionary rule as a remedy for unconstitutional searches. In so doing, the Court reasoned that the deterrent value of the exclusionary rule is "marginal or nonexistent" when the "official action in executing the warrant is pursued in 'complete good faith.' " *Id.* at 919 (other citations omitted). Under *Leon*, evidence obtained pursuant to a subsequently invalidated search will not be excluded if the executing officer exhibits "objectively reasonable reliance" on the magistrate's determination of probable cause. [FN3] *Id.* at 922. Relying on this language, the government argues that Detective Bell acted in objectively reasonable reliance on the validity of the bench warrant.

In response, appellant Gordon relies on language in *Leon* in which the Court explicitly stated that suppression would continue to be an appropriate remedy for Fourth Amendment violations under the following circumstances: (1) if the affidavit contained knowing or reckless falsehoods; (2) if the issuing magistrate "wholly abandoned his judicial role"; (3) if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) if the warrant was "so facially deficient--in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. Appellant argues that the first two, if not three, exceptions outlined above are implicated by the facts of this case.

Unfortunately, appellant's argument misses the mark. The stated purpose of the exclusionary rule is "to deter *police* misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916 (emphasis added). In fact, in distinguishing between the two types of misconduct (law enforcement versus judicial), the *Leon* Court explicitly stated that "imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors." *See United States v. Bonner*, 808 F.2d 864, 867 (1st Cir.1986) (concluding that suppression would be inappropriate where magistrate had inadvertently omitted address from the warrant: "the exclusionary rule does not serve to deter the errors of judges, but rather the errors of police officers"), *cert denied*, 481 U.S. 1006 (1987).

**4 In this case, there is no question but that the affidavit supporting the warrant was deficient. First, it was unsworn. Second, it was signed outside the presence of the clerk. And third, it contained confusing information concerning the date upon which appellant was scheduled to return to court. Significantly, however, all three defects were attributable to the municipal judge and/or his staff rather than to any law enforcement agent involved in the case. Indeed, Detective Bell testified that he had not seen the arrest warrant prior to appellant Gordon's arrest. Moreover, even if he had, there is nothing on the face of the affidavit or warrant which would suggest to its reader that the bailiff had signed the warrant outside the presence of the clerk or that there was any discrepancy concerning the date upon which Gordon was scheduled to appear.

Accordingly, notwithstanding the recognized deficiencies in the bench warrant, we believe that it would be improper to bestow a windfall upon appellant Gordon when there is no evidence that Detective Bell (or any other law enforcement officer) had any reason to know of these deficiencies. The exclusionary rule should be limited to those situations where its remedial objectives are best served, i.e., to deter illegal police conduct rather than the errors of judges, magistrates and their staff. Accordingly, the district court's decision denying appellant's motion to suppress is affirmed.

Having determined that the good faith exception to the warrant requirement applies, this Court need not address the government's alternative argument that it possessed probable cause independent of the bench warrant, justifying appellant's arrest.

For the foregoing reasons, the decision of the district court is affirmed.

FN* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation

FN1. According to employees in the clerk's office of the Akron Municipal Court, cases involving fines are checked periodically to determine which defendants, if any, are delinquent. Due to the periodic nature of these reviews, there is a *de facto* grace period between the actual payment due date and the date the file is reviewed by the clerk's office. In other words, so long as the defendant is current *as of the date of*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

50 F.3d 11 (Table)                                                                                        **Page 4**
(Cite as: 50 F.3d 11,  1995 WL 108988, **4 (6th Cir.(Ohio)))

*review,* no action will be taken as a result of prior delinquencies

FN2 According to the bailiff, he followed the same practice for all administrative bench warrants involving a defendant's "failure to pay or appear."

FN3 Although *Leon* arose in the context of a search warrant, the principles enunciated therein apply with equal force to arrest warrants, since both implicate significant Fourth Amendment concerns. *See. e.g., Malley v. Briggs,* 475 U.S. 335, 344, n 6 (1986); *Juriss v. McGowan,* 957 F.2d 345 (7th Cir 1992)

50 F.3d 11 (Table), 1995 WL 108988 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.