# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 538
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO  45202-3988

LEONARD GREEN

CLERK

TELEPHONE
(513)  564-7000

September 26, 2006

Dana M. Peters
Sylvia T. Kaser
John F. DePue
Mahir T. Sherif

Re:     Case No. 05-4199
        *United States of America v. Nuradin M. Abdi*
        District Court No.  04-00088

Dear Counsel:

Enclosed are copies of corrected pages from the decision originally sent to you on September 22, 2006.  Please make corrections in your publication version as indicated on page 9, line 3 from the of the bottom of text; page 11, line 12 of footnote 17; page 15, line 6 from the bottom; page 18, line 9 of the text; line 6 of footnote 5.

Thank you for your cooperation in this matter.

Yours very truly,

Leonard Green, Clerk

By *Linda K. Martin*
(Mrs.) Linda K. Martin
Deputy Clerk

LKM/swh
Enclosure

cc:     Honorable Algenon L. Marbley
        Clerk, United State District Court
        Lexis Nexis
        West Publishing Company
        Commerce Clearing House, Inc.
        Bureau of National Affairs
        M. Lee Publishers LLC
        Loislaw
        Lawyers Weekly

Abdi's statements and the derivative evidence, regardless of whether the arrest violated 8 U.S.C. § 1357(a)(2), because the arrest was conducted in a public place and supported by probable cause, and therefore the Government was not required to obtain a warrant to comply with the Fourth Amendment.[14]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999) (internal citation omitted). However, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Watson*, 423 U.S. 411, 417-24 (1976). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable . . . officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 696 (1996)), *quoted in United States v. Romero*, 452 F.3d 610, 615-16 (6th Cir. 2006). The issue in this case is whether, based on the information known at the time of the arrest, a reasonable JTTF agent could conclude that there was probable cause to believe that Abdi committed the crime of providing material support or resources to designated foreign terrorist organizations, a felony under 18 U.S.C. § 2339B.

The district court found that the Government had probable cause to execute an administrative arrest based on the information provided by the FBI and set forth in the Turgal Declaration. Specifically, the district court found the facts establishing probable cause included: (1) the statement by Faris, a self-confessed Al Qaeda operative, that Abdi told him he intended to "shoot up a mall" with an automatic weapon; (2) ascertainment of information from Faris' computer indicating Abdi had sent him e-mails in 2001 about surveillance equipment that could be purchased; (3) independent corroboration that Abdi had relationships with known terrorists; and (4) telephone activity from Abdi's phone number to approximately forty other numbers connected to FBI terrorism cases. (JA 101-02.) The briefs do not challenge the district court's finding that, by the time Abdi was arrested, the Government had probable cause to believe he was a national security risk as defined by 8 U.S.C. § 1182. (JA 28, 74, 101-02, 171, 216, 480, 487.) Rather, Abdi contends that the Government did not have probable cause to believe he was a felon and that the arrest therefore violated his rights under the Fourth Amendment.[15] Abdi's argument misconstrues the law. *(2004)*

"An arresting officer's state of mind, except for the facts that he knows, is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153, citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Thus, despite Abdi's argument to the contrary, it is constitutionally irrelevant that the ICE officers' reason for arresting him was their belief that he was

---

[14] During the suppression hearing, the district court found that the Government had probable cause to believe Abdi was a national security threat. *See* JA 171, 440, 481. Accordingly, the parties focused their arguments on whether the Government violated 8 U.S.C. § 1357(a)(2) in effecting the warrantless arrest. Neither the parties, nor the district court, made a distinction between probable cause under the immigration statute and probable cause under the Fourth Amendment.

[15] Although counsel for Abdi initially argued that "the government had no probable cause under the laws of these United States to arrest Nuradin Abdi on the 28th of November 2003," (JA 71), based on the district court's questions during the hearing, counsel decided not to specifically address the Fourth Amendment probable cause issue. (JA 496.) In his Reply brief filed with this court, Abdi again raises the argument that the Government did not have probable cause to arrest Abdi under the Fourth Amendment because the Government had no reason to believe he was engaged in a felony or otherwise committing a crime in public. (Appellee's Br. at 3-4.)

judicial preference [for a warrant] into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause . . . . ").

The Supreme Court has made it clear that there is no requirement "that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest . . . ." *Devenpeck*, 543 U.S. at 153. Yet, the substantial identity between the immigration statute and criminal statute in this case further supports our holding that the district court considered the facts before it and found, albeit not expressly in its opinion, that the Government had probable cause to believe that Abdi was a member of a terrorist organization, had made a threat to engage in an act against the United States, and had solicited others to engage in that act. (JA 95-102.) Because we find that the district court properly concluded that Abdi's arrest was based on probable cause that he was in violation of immigration laws set forth in 8 U.S.C. § 1182(a)(3)(B)(iv), which also constitute felony offenses under 18 U.S.C. § 2339B,[17] and the arrest was made in public,[18] we conclude that no violation of the Fourth Amendment resulted from the warrantless arrest. *Payton*, 445 U.S. 590-92; *Watson*, 432 U.S. at 423. Therefore, we hold that Abdi's constitutional rights were not implicated by his warrantless arrest and application of the exclusionary rule is inappropriate. Accordingly, the district court erred in granting Abdi's motion to suppress based on the Fourth Amendment.[19]

---

[17] The dissent contends that "the evidence underlying the probable-cause determination for the immigration arrest *may have* sufficed for probable cause under the criminal provision, but the Government, by not raising this argument until its reply brief in this Court, has not afforded Abdi his right to challenge that evidence in district court or even to argue that point to this Court. Waiver is therefore appropriate." (Dissent at 17.) However, this contention ignores the fact that, as discussed above, the Turgal Declaration contained the information necessary "[t]o determine whether or not there was probable cause that Nuradin Abdi was associated with a known terrorist organization, that he made a threat to engage in a terrorist act against the United States, and that he incited and/or solicited others to engage in that act" (JA 74), conduct embraced by both the immigration and criminal statute, and ignores the fact that the district court relied on this information in finding that the Government had probable cause to arrest Abdi. (JA 28-29.) Moreover, despite the dissent's assertion to the contrary, Abdi had several opportunities to argue that the Government's probable cause determination under the immigration statute was not sufficient to establish probable cause to believe Abdi was in violation of the criminal statute. (JA 71, 496.) *See United States v. Shameizadeh*, 41 F.3d 266, 267 ("[A] defendant may present, as part of his brief in the government's appeal, any arguments he may have advanced in the (6th Cir. 1994) district court which would provide an alternative basis for affirming the order of suppression.") (internal citations omitted). In fact, during oral argument before this court, Abdi's attorney was asked to explain how probable cause under the immigration statute was not the equivalent of probable cause under the criminal statute, but like the dissent, he was unable to articulate any difference between the two statutes.

[18] Abdi was arrested shortly before 6:00 a.m. on Friday, November 28, 2003 as "[h]e was coming out" of his apartment building on his way to morning prayer. (JA 347-48.) The dissent apparently contends that this fact alone is not enough to establish that the arrest was in "public." (Dissent at 17.) According to the dissent, "because the Government chose not to raise its new argument [that the arrest was a public arrest based on probable cause] in the district court, there was no development of the record related to whether Abdi was in the curtilage of his home when arrested." (Dissent at 18.) We note that by the very nature of Abdi's motion to suppress, the facts surrounding Abdi's arrest were at issue during the suppression hearing and both parties had an interest in presenting evidence and questioning witnesses about the specific circumstances of the arrest and the actions of the officers on the day of the arrest. From our review of the record it seems clear that despite Abdi's contention that the arrest violated the Fourth Amendment, "there was no development of evidence" as to whether or not Abdi's arrest was in public because the parties and the court recognized that Abdi's arrest made outside of his apartment building was a public arrest. In fact, Abdi's Reply brief specifically acknowledged that "FBI and ICE agents arrest[ed] Abdi outside his home." *See Appellee's Br.* at 2, 3-4.

[19] The dissent argues that the Government failed to adequately raise the issue of probable cause under the Fourth Amendment as an alternative basis for Abdi's arrest in the district court and that we should therefore treat as waived the Government's argument on appeal that the arresting officers had probable cause to believe Abdi had committed a criminal offense. (Dissent at 4-5.) The dissent contends that under the Supreme Court's decisions in *Steagald v. United States*, 451 U.S. 204 (1981), and *Giordenello v. United States*, 357 U.S. 480, 488 (1958), we may not rely on the Government's argument that it had probable cause to believe Abdi had committed a criminal offense as a basis for reversing the district court's order. (Dissent at 5, 8.) We disagree.

No. 05-4199     *United States v. Abdi*                              Page 15

a claim that was waived below, we adhere to our general practice and decline to address respondent's Fourth Amendment argument."); *Giordenello v. United States*, 357 U.S. 480 (1958). Following Supreme Court precedent, our sister circuits have declined to consider Fourth Amendment arguments raised for the first time on appeal. *See United States v. Nee*, 261 F.3d 79, 86 (1st Cir. 2001) (holding that, by failing to raise it to the district court, the Government waived its argument that the subjective intent of the officers was irrelevant for establishing probable cause); *United States v. 22249 Dolorosa Street*, 167 F.3d 509, 512 (9th Cir. 1999) (holding that the government waived its argument that the defendant did not have standing to challenge a search when it failed to raise that argument to the district court); *United States v. Gonzales*, 79 F.3d 413, 419 (5th Cir. 1996) (holding that the government waived its standing argument when it was put on notice that the defendant would claim a privacy interest).

The Supreme Court's decision in *Giordenello* is on all fours with the case at bar. There, the petitioner challenged the validity of the warrant issued for his arrest, arguing that the complaint underlying the warrant was defective. 357 U.S. at 484. In the lower courts, the government defended the legality of the petitioner's arrest "by relying entirely on the validity of the warrant." *Id.* at 487. On appeal, however, the government raised a new argument to validate the arrest regardless of whether the warrant was valid, namely, that applicable law "permits the arrest without a warrant upon probable cause that the person arrested has committed a felony." *Id.* The Court held that the government waived this argument: "We do not think that these belated contentions are open to the Government in this Court and accordingly we have no occasion to consider their soundness." *Id.* at 488. "To permit the Government to inject its new theory into the case at this stage," the Court continued, "would unfairly deprive petitioner of an adequate opportunity to respond." *Id.* The Court reached this conclusion because in the district court the petitioner, "being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine [a Government witness] or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time." *Id.* Moreover, there was no basis to send the case back to the district court for a hearing on the facts underlying the government's new argument, because "[t]he facts on which the Government now relies to uphold the arrest were fully known to it at the time of trial, and there are no special circumstances suggesting such an exceptional course." *Id.* *See also Steagald v. United States*, 451 U.S. 204 (1981) (government argued in district court that exigent circumstances and consent justified warrantless search of residence, but additional argument on appeal that petitioner had no expectation of privacy in residence was waived).

Under *Giordenello* and its progeny, the Government has waived its new justification for Abdi's warrantless arrest. Just as in *Giordenello*, in the district court the Government defended the arrest entirely on one basis (the statute) and then on appeal, for the first time, argued the arrest was justified because there was probable cause to believe the defendant had committed a felony. *See Giordenello*, 357 U.S. at 487. Indeed, the facts warranting waiver here are even stronger than in *Giordenello* because not only did the Government here fail in the district court to make its argument that this arrest could be seen as a typical criminal arrest for which there was probable cause, it took pains to argue the contrary. For example, the Government stated that "*[u]nlike the warrant requirement in the usual criminal arrest*, in this case, the warrant would have offered no further constitutional protection to the defendant." (Appellant's Br. to District Ct. at 23 (emphasis added).) The Government further argued that Supreme Court precedent does not "require hyper-technical analysis of a warrantless arrest or proof of exigent circumstances where an arrest, like this one, is authorized by a federal immigration statute." (*Id.* at 22 (referring to *United States v. Watson*, 423 U.S. 411 (1976)). *See also id.* ("[T]he warrant requirement within the administrative immigration system is different from the usual criminal context."); *id.* at 21 (noting that the administrative warrant system "differs fundamentally from the criminal judicial system").) A finding of waiver is all the more appropriate in this situation, where the Government has changed its position. *See Steagald*, 451 U.S. 209 ("The Government . . . may lose its right to raise factual issues of this sort

No. 05-4199        *United States v. Abdi*                                    Page 18

"[P]etitioner,

Because the Government chose not to raise its new argument in the district court, there was no development of the record related to whether Abdi was in the curtilage of his home when arrested. *Cf. United States v. Pace*, 898 F.2d 1218, 1229 n.2 (7th Cir. 1990) (court had no detail concerning condominiums' common-area garage "and the application to it of the four factors cited in *Dunn*, so it [was] not possible to decide for certain whether the garage . . . was curtilage"). To be clear, I recognize that the Government may have had little difficulty establishing that Abdi was outside the curtilage of his home.[5] But that is not the point. What matters is that, just as in *Giordenello* and *Steagald*, the Government's district-court arguments made evidence on the point irrelevant. *See Giordenello*, 357 U.S. at 488 (petitioner being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine [a Government witness] or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time.").

The Government here chose in the district court — for whatever reasons — not to go down the path of probable cause for a warrantless criminal arrest in public; it cannot now be heard to avail itself of this theory. I would hold that this argument is waived.

### III. FOURTH AMENDMENT VIOLATION

Having concluded that the Government waived its argument that Abdi's warrantless arrest was constitutional as one in public and supported by probable cause that Abdi had committed a felony, I turn to the Government's preserved argument that the arrest satisfied the civil immigration statute, 8 U.S.C. § 1357(a)(2). On that point, I agree with the district court, for the reasons stated in its opinion, that there was not probable cause to believe Abdi was an escape risk and that the arrest therefore violated the statute.[6] Thus, because the Government violated the statute and waived its argument that it had probable cause to arrest Abdi for a felony, the Government has failed to meet its burden to show the warrantless arrest satisfied the Fourth Amendment.[7] I would therefore **AFFIRM** the order of the district court.

---

[5]Though, without a factual record, we certainly cannot assume this to be so. *Cf. Windgren*, 429 F.3d at 582 ("[T]he cleared area immediately surrounding the house constituted curtilage."); *Causey v. Doyle*, 442 F.3d 524, 528-29 (6th Cir. 2006) ("A fenced backyard such as the plaintiffs' is within the curtilage of the residence and therefore receives Fourth Amendment protection."); *Bradley*, 922 F.2d at 1293 (noting that warrantless arrests violated Tennessee law — which this Court later stated "paralleled the federal standard," *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) — when officers "enter[ed] private, occupied lands for the purpose of making an arrest").

It is also debatable whether the Government could have established "exigent circumstances" justifying a warrantless entry into Abdi's home or curtilage. We have traditionally found the existence of exigent circumstances (1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; or (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *Causey*, 442 F.3d at 529 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)).

[6]I reach this issue because, were I to decide — notwithstanding my conclusions regarding waiver — that the warrantless arrest *satisfied* the statute, I would presume the constitutionality of the statute and join the majority in holding that there was no Fourth Amendment violation.

[7]Given the majority's holding that there was no Fourth Amendment violation, I do not address whether the district court properly suppressed under *Brown v. Illinois*, 422 U.S. 590 (1975), the various statements and physical evidence at issue. I also note that, were the argument properly before me, I would agree with the majority's holding that suppression is not available as a remedy for violations of 8 U.S.C. § 1357(a)(2) that do not amount to Fourth Amendment violations. (*See* Maj. Op. at 8.)