## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:04-CR-88** |
| | : | |
| **NURADIN ABDI,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter is before this Court on numerous pretrial motions filed by Defendant Nuradin

Abdi ("Defendant") and the Government.  This Court conducted an oral hearing on several of

these motions on July 6, 2007, and based on those arguments and those set forth in memoranda

submitted to this Court, this Court rules as set forth below.

### II.  BACKGROUND

On June 10, 2004, a Grand Jury returned a four-count indictment against Defendant

Nuradin Abdi.  Count One alleges that from late 1997 until November 2003, Defendant, in

violation of 18 U.S.C. § 2339A and 18 U.S.C. § 371, conspired to provide material support to

terrorists with the knowledge or intent that his support would be used to carry out a violation of

18 U.S.C. § 956, which prohibits conspiracy to kill, kidnap, maim, and injure persons or property

in a foreign country.  Count Two alleges that from late 1997 or early 1998 until November

2003, Defendant, in violation of 18 U.S.C. § 2339B, conspired knowingly to provide material

support to al Qaeda, a designated Foreign Terrorist Organization ("FTO").

The overt act alleged in furtherance of Counts One and Two charges that Defendant, on April 27, 1999, applied for a travel document from Immigration and Naturalization Service ("INS") and concealed his true destination by claiming that he would be visiting Germany and Saudi Arabia but, instead, intending to travel to Ogaden, Ethiopia for military-style training in preparation for a violent Jihad.

Counts Three and Four both allege violations of 18 U.S.C. § 1546(a), which prohibits, *inter alia*, fraud or misuse of immigration documents.  Specifically, Count Three alleges that on June 11, 1999, Defendant knowingly possessed, obtained, and received a false Refugee Travel Document because the Travel Document had been granted on the basis of a falsified asylum application.  Count Four alleges that on March 25, 2000, Defendant knowingly used a false Refugee Travel Document.  The Indictment further charges that Defendant committed the offenses charged in Counts Three and Four in order to facilitate an act of international terrorism.

### III.  ANALYSIS

**A.     Defendant's Motion to Dismiss for Prejudicial Pre-Indictment Delay [Doc. 44][1]**

Defendant moves this Court for an order dismissing the Indictment based on prejudicial delay between the time of the alleged events and the time of the return of the Indictment. Defendant states that the offenses in Counts One and Two of the Indictment are activities that allegedly occurred between "late 1997 to November 2003" and the overt act stated for both

---

[1]This Court orally denied the following motions at the September 15, 2005 status conference, just prior to the appeal of an evidentiary ruling: Defendant's Motion for Prejudicial Pre-Indictment Delay [Doc.44]; Defendant's Motion to Dismiss Count One, Count Two, Count Three and Count Four of the Indictment for Insufficiency [Doc. 50]; Defendant's Motion for a Bill of Particulars [Doc. 55]; and Defendant's Motion to Dismiss Count Two for Failure to State an Offense [Doc. 95].  The Court provides written analysis for these rulings within this Opinion and Order.

Counts allegedly occurred on April 27, 1999.  Further, the offenses in Counts Three and Four are activities that allegedly occurred on June 11, 1999 and March 25, 2000, respectively.  Defendant claims that his Fifth Amendment right to a fair trial as been substantially prejudiced by the delay between these events and the issuance of the Indictment, which was  returned on June 10, 2004.  Specifically, Defendant claims that the delay has allowed the Government to gain a tactical advantage over Defendant because the delay may affect the availability of witnesses and records.

In response, the Government contends that it did not learn of Defendant's criminal activities beginning in 1997 until the spring of 2003, and, therefore, the Government could not possibly have charged Defendant with any offense prior to that day.  Additionally, the Government states that the period between the date of Defendant's arrest on November 28, 2003 and the June 10, 2004 indictment was not for purposes of delay, but rather necessary for an adequate investigation.[2]

Although the statute of limitations is the primary protection against stale prosecutions "the Due Process Clause has a limited role in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977).  To obtain relief under the Due Process Clause, "the defendant [must] prove that the government's delay in bringing the indictment was a deliberate device to gain an advantage over [the defendant] and that [the delay] caused him actual prejudice in presenting his defense." *United States v. Gouvea*, 467 U.S. 180, 192 (1984); *see also United States v. Rogers*, 118 F.3d 466, 475 (6th Cir. 1997) (requiring defendant to prove both actual

---

[2]While the current indictment was not issued until June 10, 2004, Immigration Customs Enforcement (ICE) administratively charged Defendant on December 1, 2003 for allegedly violating certain immigration laws, and, subsequently, Defendant was ordered to be deported on March 9, 2004.

substantial prejudice and intentional delay on the part of the government).  A delay resulting

from investigative efforts "does not deprive [a defendant] of due process, even if his defense

may have been somewhat prejudiced by the lapse of time."  *Rogers*, 118 F.3d at 476 (quoting

*United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986)); *see also United States v. DeClue*, 899

F.2d 1465, 1468-69 (6th Cir. 1990) (holding that a due process claim of excessive pre-indictment

delay will fail unless the petitioner can show that the government had no valid reason for the

delay or that some tactical advantage was sought to be obtained by the delay).

In this case, Defendant fails to demonstrate that the Government's delay was used as a

deliberate device to gain an advantage, or that the delay caused substantial prejudice to

Defendant's case.  While Defendant's alleged criminal acts occurred up to seven years before the

return of the Indictment, little more than a year passed from the time the Government had reason

to know of Defendant's criminal actions to the time of the Indictment.  The one-year delay was

for legitimate investigatory reasons – reasons sufficient to avoid dismissal.  *See United States v.*

*Solomon*, 688 F.2d 1171, 1179 (6th Cir. 1982) (holding that an investigatory delay of three and

one-half years due to IRS investigation was legitimate).  Defendant has set forth no factual basis

to support a claim that the delay was deliberate in order to gain a tactical advantage; he has

simply asserted that the delay was intentional.  Mere allegations are insufficient to meet a

defendant's burden of showing deliberate delay.  *United States v. Royals*, 777 F.2d 1089 (5th

Cir. 1985).  Most, if not all, of Defendant's complaints are traceable to the time between his

alleged crimes and when the Government became aware of them.  In other words, the delay is

attributable to the success of Defendant's alleged covert conspiracy.  A defendant cannot elude

4

prosecution for years and later use his own alleged successful evasive conduct to support a claim of pre-indictment delay.

Further, Defendant has failed to put forth evidence of actual "substantial prejudice." Defendant argues that because of the passage of time between his alleged acts and the Indictment, witnesses will be difficult to locate, their recollections may be poor, and certain records may no longer be available.  These are general arguments, however, and Defendant fails to set forth specific grounds for his claim.  Defendant notes his burden to prove actual prejudice and states that he will supplement his Motion with specific instances of such; this Court, however, has never received any supplement.

For the foregoing reasons, Defendant's Motion is **DENIED**.

**B.**      **Defendant's Substantive Motions to Dismiss**

Defendant filed the following motions to dismiss based on the substantive charges in the Indictment:

- **Defendant's [First] Motion to Dismiss Count One, Count Two, Count Three and Count Four of the Indictment for Insufficiency [Doc. 50]**;
- **Defendant's [Second] Motion to Dismiss Count Two for Failure to State an Offense [Doc. 95];**
- **Defendant's Second Motion to Dismiss Count One [Doc. 144]**;
- **Defendant's Third Motion to Dismiss Count Two [Doc. 145]**;
- **Defendant's Second Motion to Dismiss Counts Three and Four [Doc. 146]**

Because many of the issues overlap, and Defendant often restates the same arguments, this Court addresses the Motions together by reviewing each Count and the related challenges asserted by Defendant.

## 1.  Count One:  Conspiracy to Provide Material Support to Terrorists

Count One charges as follows:

1. From in or about late 1997 to on or about November 27, 2003, the defendant, Nuradin M. Abdi, in the Southern District of Ohio and elsewhere, did knowingly and willfully combine, conspire, confederate, and agree with other persons, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 2339A.

2. It was a part and object of the conspiracy that the defendant, Nuradin M. Abdi, and other persons known and unknown to the Grand Jury, would and did, within the United States, provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

3. [Over Act:] In furtherance of the conspiracy and to effect the illegal objects thereof, the following Overt Act, and others, was committed by the defendant:
On April 27, 1999, the defendant, Nuradin M. Abdi, applied to the Immigration and Naturalization Service (currently known as the Department of Homeland Security, Bureau of Immigration and Customs Enforcement) ("INS") for a travel document, wherein he concealed his destination by representing that he intended to visit Germany and Saudi Arabia for the purpose of "Umrah (Holly [sic] – Mecca) and visit my relative," when, as the defendant then well knew, he planned to travel to Ogaden, Ethiopia, for the purpose of obtaining military-style training in preparation for violent Jihad.

All in violation of Title 18, United States Code, Sections 371 and 2339A.

Defendant argues that Count One should be dismissed because: (1) it is insufficient to apprise Defendant of the charges against him; (2) the version of 2339A under which Defendant was indicted has been invalidated; and (3) the present version of 2339A remains unconstitutional as amended.

<u>Insufficiency</u>

Defendant argues that this Court should dismiss Count One due to insufficiencies in the charges. Federal Criminal Procedure Rule 7(c)(1) contains the relevant standard: "The indictment or the information shall be a plain, concise and definite written statement of the

essential facts constituting the offense charged. . . . It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such a statement."  Fed. R. Crim. P. 7(c)(1).  An indictment complies with this rule, which derives from the Fifth and Sixth Amendments, if it: "(1) 'contains the elements of the offense charged;' (2) 'fairly informs a defendant of the charge against which he must defend;' and (3) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  In other words, an indictment satisfies the Fifth and Sixth Amendments if it first, sets out all of the elements of the charged offense and gives notice to the defendant of the charges he faces; and second, is sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *Russell v. United States,* 369 U.S. 749 (1962); *see also United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).  An indictment generally meets these sufficiency requirements when it tracks the language of the statute.  *Hamling*, 418 U.S. at 117; *United States v. Phibbs*, 999 F.2d 1053, 1083 n.14 (6th Cir. 1993).

With respect to Count One, Defendant specifically argues that it should be dismissed for insufficiency because it: (1) fails to particularize the type of material support that Defendant allegedly provided and how such support was provided, disguised, or concealed; (2) fails to state who Defendant and others were conspiring to kill, maim, kidnap, damage, or injure under 18 U.S.C. § 956; and (3) omits the facts of the conspiratorial agreements, including when said agreement was made, the object of the conspiracies, and any specific dates.  The Government

counters that Count One meets constitutional requirements because it sets out all of the elements of the charged offenses and tracks the statutory language of § 2339A almost verbatim.

The Court finds the Government's position well-taken.  The Indictment tracks the language of the statute and sets out all of the elements of the offenses charged in Count One. Section § 2339A reads as follows:

> Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section . . . 956 . . . or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act [shall be guilty of a crime].

18 U.S.C. § 2339A.  The language used in Count One of the Indictment closely mirrors the words of the statute alleging that Defendant conspired to "provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 . . . in preparation for, and in carrying out, the concealment and an escape from the commission of such violation."  In addition to tracking the statute's language virtually verbatim, the words used contain the essential elements of § 2339A, including: (1) an agreement; (2) to provide material support (3) with the knowledge or intent that it will be used in preparation for a violation of 18 U.S.C. § 956 (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), thereby satisfying the constitutional requirements.

Defendant's argument that the Indictment does not allege conspiracy with adequate specificity is unpersuasive.  It is well established that "the defendant does not 'need' detailed evidence about a conspiracy in order to prepare for trial properly," nor do "[d]etails as to how

8

and when a conspiracy was formed, or when each participant entered it, need [to] be revealed before trial." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). Similarly, an allegation of conspiracy need not be dismissed for failing to identify specific co-conspirators. *Rogers v. United States*, 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown."); *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) ("[I]t is not essential that a conspirator know all other conspirators" because "[i]t is the grand jury's statement of the existence of the conspiracy agreement rather than the identity of those who agree which places the defendant on notice of the charge he must be prepared to meet.") (internal quotation marks and citations omitted). Moreover, with regard to 18 U.S.C. § 956 (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), the Indictment need not state who Defendant and others conspired to kill, kidnap, maim, or injure, or what property Defendant and others conspired to damage and destroy. *See United States v. Sattar*, 314 F. Supp. 2d 279 (S.D.N.Y. 2004) ("[T]he language of § 956(a) does not require that an indictment allege the identities of contemplated victims or the specific location outside of the United States where the contemplated killing, kidnapping, or maiming is to occur."). Additionally, "[i]t is well settled that in an indictment for conspiring to commit an offense – in which the conspiracy is the gist of the crime – it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy . . . ." *United States v. Branan*, 457 F.2d 1062, 1064 (6th Cir. 1972). Thus, the Court rejects Defendant's argument that Count One is insufficient.

9

Invalidation of 2339A

Defendant states that the grand jury in this case indicted him "under the mistaken belief that his alleged conduct could constitute a crime."  Defendant asserts that the Government has accused him of lying on an immigration document for the purpose of visiting a training camp, yet fails to allege that: a) the training camp was under the control of or affiliated with any specific organization; b) Defendant had any specific intent on where he might use the training; or c) that Defendant actually went to the training camp.  Defendant argues that without alleging any of these facts, he cannot be convicted of a crime.

In support of his arguments, Defendant relies upon a series of Ninth Circuit cases involving the Humanitarian Law Project, in which Defendant asserts that the court found § 2339A to be unconstitutionally vague.  Defendant misinterprets the line of cases, however, and confuses §§ 2339A and 2339B, both of which Defendant is accused of violating.[3]  In the Humanitarian Law Project cases, plaintiffs – five organizations and two United States citizens seeking to provide support to the lawful, nonviolent activities of several groups designated as foreign terrorists organizations – feared that providing such support would expose them to criminal prosecution under § 2339B for proving material support and resources to foreign

---

[3]Section 2339A prohibits the provision of material support or resources "knowing or intending" that they be used for executing violent federal crimes.  Section 2339B requires only that an individual knowingly provide material support or resources to a foreign terrorist organization.  Section 2339A defines the term "material support" as any "property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." Section 2339B adopts the same definition.  *See* 18 U.S.C. §2339B(g)(4).

terrorist organization.  The plaintiffs sought a preliminary injunction barring the enforcement of § 2339B against them, asserting that the terms "training" and "personnel" were impermissibly vague under the Fifth Amendment.  The District Court agreed, *Humanitarian Law Project v. Reno*, 9 F. Supp. 2d 1176 (C.D. Cal 1998) and the Ninth Circuit affirmed, *Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ("HLP I").  In response, the district court issued a permanent injunction, which the Ninth Circuit upheld.  *See Humanitarian Law Project v. United States Department of Justice*, 352 F.3d 382 (9th Cir. 2003) ("HLP II"), *vacated after statutory amendment*, 393 F.3d 902 (9th Cir. 2004).  In addition to upholding the district court's conclusion that "personnel" was impermissibly vague in 2339B, the Ninth Circuit's ruling in HLP II construed § 2339B to require that the donor of material support have knowledge that the recipient either had been designated as a foreign terrorist organization or engaged in terrorist activities (and not, merely, knowledge of providing material support).  On December 17, 2004, as part of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, codified at 18 U.S.C. § 2339B(h) (hereafter "IRTPA"), Congress amended the term "personnel" in the definition of material support, as applied to § 2339B only.

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h).

Defendant argues that, unlike the time during which he was indicted, it is now clear that § 2339A is limited to employees or employee-like operatives who serve the designated group and

11

work at its command.  Defendant asserts that the grand jury found probable cause under § 2339A at a time when the Government and others "were under the erroneous impression that merely visiting a training camp" could constitute a violation of 2339A, or that independent actors attending unaffiliated camps could be encompassed under the statute.  Defendant asserts that the Government has not adequately charged him with providing "personnel" under the present version of the statute because it has not alleged that Defendant maintained an employee-like relationship with any terrorist organization, or that the training camp where the Government alleged Defendant planned to visit was affiliated with any terrorist organization.

Defendant's arguments lack merit on several basis.  First, the "personnel" amendment referred to in HLP I and II applies to § 2339B and not § 2339A.  The plaintiffs in the HLP cases did not challenge § 2993A, but rather used that provision to distinguish 2339B.  "While the statutory language of 2339A includes an explicit mens rea requirement to further illegal activities, such a requirement is notably missing from the statutory language of 2339B." *Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134, 1146 (C.D. Cal. 2005).  Instead, § 2339B requires only that an individual knowingly provide material support or resources to an organization engaged in terrorist activities.  The Court in HLP III noted that the legislative history indicates that Congress enacted § 2339B in order to close a loophole left by § 2339A.  As § 2339A was limited to individuals (such as donors) who intended to further the commission of specific federal offenses, § 2339B encompassed donors who, though contributing to FTOs, acted without the intent to further federal crimes.  Congress made a specific finding that "foreign organizations that engaged in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."  18 U.S.C. § 2339B advisory note.

As discussed further below in the analysis for Count Two, the 2004 amendment provides a mens rea requirement so that § 2339B covers only those who knowingly contribute to a FTO, knowing that such organization is in fact an FTO or an organization that engages or engaged in terrorist activities. The statute, however, still covers individuals such as donors who contribute to an organization knowing that it is an FTO even if they do not intend to further criminal conduct. In essence, Congress is restricting the ability of FTOs to raise funds needed for terrorist acts because providing support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts. Under the amended "personnel" definition, however, individuals such as the plaintiffs in the HLP Cases can provide aid as long as they act independently of the FTO; criminal conduct is limited to those working under the "direction or control" of an FTO or actually managing or supervising an FTO operation. Again, this only addresses § 2339B as § 2339A already includes a mens rea requirement that the individual provide material support – such as personnel, not limited to the personnel as amended in 2339B – *with the intent that the support be used to further the commission of federal crimes.* Defendant's reliance on the HLP Cases is, therefore, wholly irrelevant and inappropriate with respect to § 2339A and Count One of the Indictment.

Second – and perhaps more importantly – Defendant, in several motions, confuses the criminal conduct alleged in Count One with the overt act provided in the indictment. Defendant states that the grand jury erroneously concluded that "merely visiting a training camp" could constitute a violation of 2339A. Defendant, however, is not charged with "merely visiting a training camp." He is charged under § 2339A with conspiring to provide material support to terrorists knowing and intending that such support be used in violation of other federal crimes.

13

The *overt act* alleged by the Government is Defendant's plan to attend a training camp, and his misrepresentation on an INS document in order to do so.  The "material support" that Defendant allegedly conspired to provide to terrorists, may *include* himself (as personnel at a training camp) but it is not limited to such simply because the Government included that activity as a specific overt act.

Defendant's contention that § 2339A has been found unconstitutionally vague, therefore, is not well taken.

Constitutionality of 2339A

Defendant, again confusing § 2339A with § 2339B, and the crime charged with the overt act alleged, asserts that § 2339A remains unconstitutionally vague despite the amendment of "personnel."  Section 2339A was not amended; the "personnel" amendment only applies to the material support criminalized in § 2339B.  Further, Defendant's argument that § 2339A has a chilling effect on First Amendment freedoms were it to bar visits to lawful training camps is without merit.  Again, Count One charges him with providing material support to terrorists, intending that such support be used to commit other federal crimes.  Count One does not charge him with attending a training camp; it provides such action as an overt act taken in furtherance of the underlying conspiracy.

Defendant's Motions to Dismiss Count One are, therefore, **DENIED**.

**2.  Count Two: Conspiracy to Provide Material Support
to a Designated Foreign Terrorist Organization**

Count Two charges as follows:

> 4. From in or about late 1997 or early 1998 to on or about November 27, 2003, the defendant, Nuradin M. Abdi, in the Southern District of Ohio and elsewhere, did knowingly combine, conspire, confederate, and agree with other

14

persons, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 2339B.

5.  It was a part and an object of the conspiracy that the defendant, Nuradin M. Abdi, and other persons known and unknown to the Grand Jury, would and did, within the United States, knowingly provide material support and resources to a foreign terrorist organization, to wit, al Qaeda, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

6. [Over Act:] In furtherance of the conspiracy and to effect the illegal objects thereof, the following Overt Act, and others, was committed by the defendant:
On April 27, 1999, the defendant, Nuradin M. Abdi, applied to INS for a travel document, wherein he concealed his destination by representing that he intended to visit Germany and Saudi Arabia for the purpose of "Umrah (Holly [sic] – Mecca) and visit my relative," when, in fact, as the defendant then well knew, he planned to travel to Ogaden, Ethiopia, for the purpose of obtaining military-style training in preparation for violent Jihad.

All in violation of Title 18, United States Code, Section 2339B.

Much like Count One, Defendant argues that this Court should dismiss Count Two because: (1) it is insufficient to apprise adequately Defendant of the charges; (2) the version of 2339B under which Defendant was indicted has been invalidated; and (3) the present version of 2339B remains unconstitutional as amended.  In addition, Defendant argues that Count Two should be dismissed for failure to state an offense.

<u>Insufficiency</u>

Beyond sufficiency arguments considered and rejected by this Court with respect to Count One, Defendant asserts that Count Two is insufficient because it fails to allege adequately mens rea – i.e., that Defendant knew the material support he allegedly provided was for al Qaeda, a designated FTO.  At the time of his indictment, § 2339B read: "[W]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or

15

conspires to do so, shall [be guilty of a crime]."  "Knowingly," the key term in analyzing the level of mens rea in this statute, can be read in either of two ways: (1) as only modifying the verb "provides," or (2) as modifying "provides" as well as the remaining elements in the statute. *United States v. Marzook*, 383 F. Supp. 2d 1056, 1069 (N.D. Ill. 2005).  "'Congress certainly intended by use of the word 'knowingly' to require some mental state with respect to some element of the crime,' but either interpretation would 'accord with ordinary usage.'" *Id.* (quoting *Liparota v. United States,* 471 U.S. 419, 424-25 (1985)).  Several interpretations arose in relevant case law due to the ambiguity in the statute.  *Id.* (providing the various interpretations).

The first interpretation requires the Government to prove only that a defendant knowingly provided material support to an organization, *regardless* of whether a defendant knew the organization was a designated FTO or engaged in terrorism.  *Id.* (concluding that such a reading, in effect, would create a strict liability crime because a defendant could be guilty for providing material support, such as a donation, that ended up in the hands of an FTO, even if by happenstance).   The second interpretation requires the Government to prove both that Defendant knowingly provided material support, *and* that he knew that the organization was *either* a designated FTO or engaged in terrorism.  *Id.* (adopting such interpretation); *see also HLP II,* 352 F.3d at 400 ("when Congress included the term "knowingly" in § 2339B, it meant that proof that a defendant knew of the organization's designation as a terrorist organization or proof that a defendant knew of the unlawful activities that caused it to be so designated was required to convict a defendant under the statute"), *vacated on other grounds*, 393 F.3d 902 (9th Cir. 2004). The third interpretation requires the Government to prove that the defendant knowingly provided

16

material support, knew the organization was either a designated FTO or engaged in terrorism, *and* specifically intended to further the organization's terrorist activities.  *See United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1338-39 (holding that the government not only must prove that a donor knew the recipient was an FTO, but also that the donor specifically intended to further the terrorist activities of the organization); *Marzook*, 383 F. Supp. 2d at 1070 (stating that such interpretation would allow a defendant to contribute material support with impunity to any number of organizations that engage in terrorist activity, so long as the defendant did not know that the Secretary of State had designated the recipient an FTO).

Of these interpretations, this Court agrees with the second reasoning, as set forth by *Marzook*, which requires the government to prove that Defendant knowingly provided material support *and* that he knew that the organization (al Qaeda) was *either* a designated FTO or engaged in terrorist activities.  Although reached independently, this conclusion comports with Congress's December 17, 2004 passage of IRTPA, in which Congress clarified § 2339B's scienter requirement:

> To violate [2339B], a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d) (2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

18 U.S.C. § 2339B (2004).

Thus, the Court finds, under either the former or new version of the statute, the prosecution must not only prove that Defendant knowingly provided material support to al Qaeda, but also that Defendant knew either that al Qaeda had been designated a FTO or that al Qaeda engaged or engages in terrorism or terrorist activities.  While Congress added the scienter

requirement *after* Defendant's indictment, the definition largely tracked prior judicial decisions concerning the requirement, and was later included to eliminate the uncertainty created by the aberrant *Al Arian* decision.  *See Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134, 1147 (C.D. Cal. 2005) (viewing legislation as a rejection of the *Al-Arian* ruling); *Linde*, 384 F. Supp. 2d at 587 (in adopting definition of "knowingly," "Congress appears to have expressed its disagreement with decisions relied upon by [defendant] . . . e.g., *U.S. v. Al-Arian*").  Thus, this Court rejects Defendant's claim that Count Two is insufficient for not specifically charging that Defendant knew that the alleged support was provided to an FTO.  The Court, however, provides this analysis – and the requirements for proof under 2339B – to assist the parties in trial preparation and to provide the parties an opportunity to draft appropriate jury instructions with regard to § 2339B.

Invalidation of 2339B

Defendant repeats the same arguments as set forth for § 2339A, above.  Although Defendant's reliance on the HLP Cases is now appropriate (as those cases address § 2339B), Defendant's arguments still lack merit.

Defendant's arguments are premised on the assumption that the "material support" alleged by Count Two constitutes providing "personnel" (i.e., himself) as a potential jihadist combatant.  As discussed above, the courts in the HLP cases held that, as applied to the plaintiffs in the civil law suit – who wished to advocate on behalf of certain FTOs – the term "personnel" was unconstitutionally vague because, without a more specific definition, such term could encompass the sort of advocacy that the plaintiffs wished to provide, thereby implicating First Amendment violations.  The Government asserts that, in contrast to the HLP civil litigants,

18

Defendant's conduct, set out sufficiently in the Indictment, lies well within the central meaning of the statute's prohibitions and does not involve mere advocacy association.  The Government asserts that, as applied to offering oneself to serve as a combatant on behalf of persons bent upon committing acts of terrorism (18 U.S.C. § 2339A) or FTOs, such as al Qaeda (18 U.S.C. § 2339B), the phrase "providing 'personnel'" has never been held to be unconstitutionally vague. Further, the Government contends that Defendant lacks standing to assert that, as to other hypothetical parties, the statute is unconstitutionally vague and threatens First Amendment rights.  This Court finds the Government's argument, and the related controlling case law, persuasive.  *See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982) ("[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *Parker v. Levy*, 417 U.S. 733, 755-56 (1973) (a criminal defendant "who has fair notice from the language of [the statute] that the particular conduct is punishable [cannot] . . . challenge the vagueness of [the statute] as [it] might be hypothetically applied to the conduct of others"); *United States v. Marzook*, 383 F. Supp. 2d 1056, 1064 (N.D. Ill. 2005) ("[i]f the actor is given sufficient notice that his conduct is within the proscription of the statute, his conviction is not vulnerable on vagueness grounds, even if, as applied to other conduct, the law would be unconstitutionally vague"); *see also Ragen v. Time, Inc.*, 468 U.S. 641, 649-50 (1984) (rejecting vagueness challenge where statute clearly applied to plaintiff, despite statute's implication of First Amendment concerns); L. Tribe, American Constitutional Law 1036 (2d ed., 1988) ("[o]ne to whose conduct a statute clearly applies may not challenge it on the basis that it is 'vague' as applied to others").

To satisfy due process, a criminal statute – such as the prohibition against providing "material support," including "personnel," to a FTO – must be sufficiently clear to give a person of "ordinary intelligence a reasonable opportunity to know what is prohibited." *Granyed v. City of Rockford*, 408 U.S. 104, 108 (1972).  To satisfy this requirement, the legislature need not define an offense with "mathematical certainty" (*Grayned*, 408 U.S. at 110), but need only provide "relatively clear guidelines as to the prohibited conduct." *Posters N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994).  Section 2339B, which prohibits individuals from providing material support to FTOs in the form of personnel, satisfies such standards insofar as it applies to combatants (or would-be combatants).  As the court observed in *United States v. Lindh*, 212 F. Supp. 2d 541, 577 (E.D. Va. 2002) (though in the context of a consummated offense):

> under any reasonable construction of Section 2339B's statutory language, a person who joins the armed forces of a foreign terrorist organization, receives combat training from that organization, and serves in a combat unit to protect the organization and advance its goals has provided material support and resources – including, specifically, "personnel" – to that group. By any measure [the defendant] provided personnel, *i.e.* himself, to [the FTO] when he allegedly joined these organizations and engaged in a variety of conduct, including combat to further the goals of these organizations. Thus, to provide personnel is to provide people who become affiliated with the organization and work under its direction: the individual or individuals provided could be the provider himself, or others, or both.

*See id.* at 57 n.87 (relying upon the dictionary definition of "personnel," *i.e.*, "'a body of persons usually employed (as in a factory, office or organization)' or 'a body of persons employed in some service'"); *accord United States v. Marzook*, 383 F. Supp. 2d at 1065 (term "personnel" not unconstitutionally vague as applied to person who recruits members to join Hamas; such a fact, as charged, "quite plainly constitutes conduct one would expect to be criminalized under a statute that proscribes the provision of 'personnel' to an FTO"); *United*

*States v. Goba*. 220 F. Supp. 2d 182, 194 (W.D.N.Y. 2002) (relying upon *Lindh* and rejecting

vagueness challenge to violation of § 2339B in the form of "providing personnel" to an

FTO by offering one's services to be indoctrinated and trained as a resource).

Thus, Defendant's argument that the version of § 2339B with which he was charged has

been invalidated is not well-taken.  To the extent that Count Two charges Defendant with

providing material support by way of personnel (which, again, is not entirely accurate; it is,

instead, the overt act that alleges Defendant's provision of "personnel"), this Court finds that §

2339B was not unconstitutionally vague as applied to him at the time of his June 2004

Indictment.

<u>Constitutionality of 2339B as Amended</u>

As discussed above, Congress, as part of IRTPA promulgated in 2004, clarified the term

"personnel" as it is employed in § 2339B by adding a new subsection (h) defining the

term, as it is used in the definition of "material support."  The current statute provides:

> Provision of Personnel. No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.[4]

---

[4]  Again, this definition of "personnel" applies only to 2339B, which prohibits the provision of  "material support" (including personnel) to designated foreign terrorist organizations."  It does not apply to the term "personnel" as used to charge a violation of 18 U.S.C. § 2339A which prohibits the provision of "material support" (including the unamended version of personnel) knowing and intending that such support be used in furtherance of other criminal violations.

The Government argues that, although this amendment post-dated Defendant's indictment (and the conduct charged in Count Two), it ensures that no jury will convict him – as he maintains is yet possible – for merely expressive conduct in "the exercise of First Amendment freedoms." This Court agrees.  Because the amendment makes clear that prosecution is limited to those who "'work under [a] terrorist organization's direction and control or to organize, manage, supervise, or otherwise direct the operation of that organization,'" there is no longer any likelihood that a person will be convicted for independently engaging in protected expression on behalf of an FTO, rather than for conduct while acting under its direction and control.  *See Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134, 1152-53 (C.D.Cal. 2005).

More fundamentally, Defendant is not charged with either engaging in Jihad (which he asserts may be protected activity under the First Amendment right to freedom of expression) or traveling to a training camp for that purpose but, rather, with conspiring to provide material support to an FTO.  Allegations concerning his attempts to attend a jihadist training camp are not essential elements of Count Two, but are merely alleged as overt acts in furtherance of the conspiracy.  This Court, therefore, rejects Defendant's argument that § 2339B remains unconstitutionally vague as amended.

<u>Failure to State an Offense</u>

Defendant moves to dismiss Count Two in its entirety because the overt act alleged occurred before al Qaeda was designated an FTO.  Count Two notes that the Secretary of State designated al Qaeda an FTO on October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act.  The overt act, however, allegedly occurred on April 27, 1999.

Defendant asserts that even if he had provided material support to al Qaeda on April 27, 1999, such support would have been lawful at that point; thus, Count Two, according to Defendant's argument, fails to charge an offense.  The Government disagrees, arguing that there is no overt act requirement under § 2339B, and asserting that it is well established law that a court is prohibited from reading an overt act requirement into a conspiracy statute.  This Court finds the Government's argument well-taken.

The Supreme Court has explained that there are two types of conspiracy statutes: those that are modeled after 18 U.S.C. § 371, which requires an overt act, and those that are modeled after the common law of conspiracy, which does not require an overt act.  *Whitfield v. United States*, 543 U.S. 209, (2005).  Section 371 reads as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of the conspiracy,* each shall be fined under this title or imprisoned not more than five years, or both"

18 U.S.C. § 371 (emphasis added).  Where, however, "Congress ha[s] omitted from the relevant provision any language expressly requiring an overt act, the Court [will] not read such a requirement into the statute."  *Whitfield*, 543 U.S. at 213 (finding 18 U.S.C. § 1567(h), which reads "[a]ny person who conspires to commit any offense defined in [§ 1956] or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy," did not require an overt act because Congress had omitted any mention thereof); *see also Nash v. United States,* 229 U.S. 373 (1913) (finding no overt act requirement in the Sherman Act, 15 U.S.C. § 1, which reads "[E]very person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall

23

be deemed guilty of a felony", reasoning "we can see no reason for reading into the Sherman Act more than we find there").

In drafting section § 2339B, Congress omitted any language requiring an overt act.   The statute, at the time of the indictment, read: "[W]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall [be guilty of a crime]."  18 U.S.C. § 2339B.  The statute's language does not reflect the words of 18 U.S.C. § 371; thus, the Court will not read an overt act requirement into the statute.[5]  Because § 2339B does not require an overt act, Count Two need not be dismissed because the alleged overt act occurred before the Secretary of States designated al Qaeda an FTO.

More fundamentally, however, this Court notes that the fact that Congress designated al Qaeda as an FTO after the alleged overt act makes no difference to the sufficiency of the Indictment, even if an overt act were required.  As set forth above, a defendant can violate § 2339B if he knows that the material support is going to an FTO, or if he knows that the material support is going to an organization that engages or engaged in terrorism or terrorist activities. As discussed below in this Court's analysis of Defendant's Motion to Exclude Legal Arguments, although a conspiracy to provide material support to al Qaeda would not have been *an offense* under § 2339B on April 27, 1999 – because al Qaeda had not yet been designated an FTO – Defendant may still have provided material support to al Qaeda at that time knowing that the organization engaged in terrorism or terrorist activity, regardless of its designation of an FTO.

---

[5]     The conspiracy alleged in Count One differs from that in Count Two because 2339A, at the time of Defendant's indictment, did not include a conspiracy offense, and such offense is instead embraced by the general conspiracy provision, 371.  Section 317, as stated above, does require proof of an overt act.  Section 2339B, on the other hand, already included a conspiracy provision at the time of Defendant's indictment (thus, no need to incorporate 371); 2339B itself does not require proof of an overt act.

Because an overt act predating the date of designation is admissible to demonstrate the formation

of the conspiracy, its nature and scope, and Defendant's intent in participating in it, Count Two

is sufficient.

Defendant's Motions to Dismiss Count Two are, therefore, **DENIED**.

### 3.  Counts Three and Four

Counts Three and Four both allege violations of 18 U.S.C. § 1546(a), which prohibits,

*inter alia*, the fraud or misuse of any immigration documents.  Specifically, Count Three alleges

as follows:

> 7.  On or about June 11, 1999, in the Southern District of Ohio and elsewhere, the defendant, Nuradin M. Abdi, did knowingly possess, obtain, and receive a false Refugee Travel Document, a document required by INS and prescribed by statute or regulation for entry into the United States, knowing said Refugee Travel Document was falsely made, procured by means of false claims and statements, and otherwise unlawfully obtained, and that said Refugee Travel Document was obtained based on defendant's representations that he had been granted valid asylee status, when, in fact, as the defendant then well knew, his asylum application had been procured by means of false statements.

Similarly, Count Four alleges as follows:

> On or about March 25, 2000, in the Southern District of Ohio and elsewhere, the defendant, Nuradin M. Abdi, did knowingly use a false Refugee Travel Document, a document required by INS and prescribed by statute or regulation for entry into the United States, knowing said Refugee Travel Document was falsely made, procured by means of false claims and statements, and otherwise unlawfully obtained, in that said Refugee Travel Document was based on defendant's representations that he had been granted valid asylee status, when, in fact, as the defendant then well knew, his asylum application had been procured by means of false statements.

Both Counts also allege that Defendant violated § 1546(a) in order "to facilitate an act of

international terrorism," in violation of 18 U.S.C. § 2331.  Should the jury agree, its finding will

warrant a statutorily mandated twenty-five year enhancement.  18 U.S.C. § 1546 ("Whoever

25

knowingly [violates § 1546] [s]hall be fined under this title or imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title) . . . .").  Section 2331 defines "an act of international terrorism" as follows:

(1) the term "international terrorism" means activities that–

    (A)    involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

    (B)    appear to be intended--
        (i)    to intimidate or coerce a civilian population;
        (ii)    to influence the policy of a government by intimidation or coercion; or
        (iii)    to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

    (C)    occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum;

18 U.S.C. § 2331(1)(A)-(C). Defendant alleges that the Indictment is insufficient because it does not outline the components constituting "an act of international terrorism," but merely alleges that Defendant committed acts under § 1546 to "facilitate an act of international terrorism" without specifying the act, the intended consequence of the alleged act, or where the alleged act occurred.  The Government counters that because "international terrorism" is a term of art that is defined by statute, the Indictment "need not parrot the component parts of the statutory definition."  Stated differently, the word, in and of itself, is sufficient.

The Court finds that the Government need not allege the entire definition of "international terrorism" in the indictment.  As explained by the Court in *Kovach*, 208 F.3d 1215, 1218-19 (10th Cir. 2000), the various component parts of a statutory definition need not always be charged in the indictment.  There, in an analogous situation, a defendant, charged with

possessing counterfeit securities in violation of 18 U.S.C. § 513, challenged the indictment for its

failure specifically to charge him with possessing securities that operated or affected interstate

commerce, as required by § 513 ("[T]he statute contains a jurisdictional element which ensures,

through a case-by-case inquiry that the crime in question involves . . . interstate commerce").

The Court found that the word "organization," which was contained in the indictment,

sufficiently alleged the jurisdictional element because it was statutorily defined and was a term

of art.

> This [statutory] definition [of organization], which is narrower than the common
> definition of the word "organization," "is not merely a generic or descriptive
> term, but a legal term of art" . . . . Because this definition is applicable to all
> indictments charging a violation of § 513(a), its use is "sufficiently definite in
> legal meaning to give a defendant notice of the charge against him," . . . even if
> the "various component parts of the [statutory] definition of" organization are not
> specifically alleged in the indictment.

*Id*. (citing *United States v. Wicks*, 187 F.3d 426, 428 (4th Cir. 1999) (holding that an indictment

need not contain the component parts of a legal term of art).  This Court finds that the reasoning

of *Kovach* and *Wick* controls.  The Indictment does not charge Defendant with a vague or

undefined term.  Rather, the words "international terrorism" are defined by Section 2331 and can

only be defined thereunder when alleged in an indictment, and thus, the Court **DENIES**

Defendant's Motions to Dismiss Counts Three and Four.

**C.      Defendant's Motion for a Bill of Particulars [Doc. 55]**

Defendant has requested a bill of particulars on all four counts.  The purposes of a bill of

particulars are:

> to inform the defendant of the nature of the charge against him with sufficient
> precision to enable him to prepare for trial, to avoid or minimize the danger of
> surprise at the time of trial, and to enable him to plead his acquittal or conviction in

27

bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purpose.

*United States v. Jones*, 678 F. Supp. 1302, 1304 (S.D. Ohio 1988) (quoting *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976)).  A motion for a bill of particulars is addressed to the sound discretion of the trial court.  *Will v. United States*, 389 U.S. 90, 98-99 (1967); *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

With respect to Counts One and Two, Defendant would like the Government:  (1) to clarify which conspiracy the overt act in Count One underlies: the conspiracy alleged under 18 U.S.C. § 2339A or 18 U.S.C. § 956; (2) to narrow the alleged conspiracy's time frame; (3) to state with whom the alleged agreement was made and how the Government will show that Defendant knew the object of the agreement; (4) to particularize the type of material support Defendant allegedly provided; (5) to identify the geographic location(s) other than the Southern District of Ohio mentioned in Counts One and Two, which read "in the Southern District of Ohio and elsewhere, [Defendant] did knowingly . . . ."; and (6) to specify in Count Two the al Qaeda person or entity with whom Defendant had contact and how the Government intends to establish such contact.

The Government argues that the Motion should be denied because the Motion requests discovery beyond the scope of Rule 16 and characterizes Defendant's motion as little more than a ill-disguised discovery tool, arguing that bill of particulars is not available for the purpose of discovering the Government's theories or obtaining detailed disclosure of Government evidence prior to trial.  The Government asserts that the Indictment is sufficiently detailed in that it contains the exact dates of the alleged Overt Acts, it specifies Ethiopia as the country to which "and elsewhere" refers, and that Defendant's alleged plan to travel to Ogaden, Ethiopia, for the

28

purpose of obtaining military-style training in preparation for a violent Jihad constitutes "personnel" within the definition of material support.

The Court finds that the Indictment, taken together with the discovery already provided in this case, sufficiently apprises Defendant of the charges against him and will adequately allow Defendant to avoid surprise at trial. *See United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003) ("[A] bill of particulars is not required when the information a defendant needs to prepare his defense is available through some other satisfactory form"); *see also United States v. Sattar*, 314 F. Supp. 2d 279, 318-319 (finding the government's representations in its briefs, taken together with the indictment and discovery obviated the need for a bill of particulars).

With respect to Defendant's remaining requests on Counts One and Two, which include additional information about the conspiracy, and the names of the Al Qaeda representatives, and the geographic locations other than the Southern District of Ohio, these particular requests are either "merely an attempt to preview the Government's evidence or legal theories, a ground on which the Court will not grant a bill of particulars," *Sattar*, 272 F. Supp. 2d 348, 382-83 (S.D.N.Y. 2003), or have been adequately provided in some other form. In *Sattar*, the Defendant was similarly charged with conspiracy to provide material support and requested a bill of particulars detailing the date the defendant became a member of the conspiracy, the names of her alleged co-conspirators, and the date and location of each act that she allegedly performed in furtherance of the conspiracy. *Id*. The court explained that "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied," reasoning that the indictment and "extensive other materials provided to the defendants adequately apprise the defendants of the charges against them." *Id*.

29

(citations omitted).  Likewise, the Indictment sufficiently apprises Defendant of the geographic locations, Ethiopia and the Southern District of Ohio, where Defendant allegedly committed the offenses.  The information needed to prepare Defendant's defense is readily obtainable through the Indictment and ample discovery.

Similarly, the Court denies Defendant's Motion for a Bill of Particulars with regard to Counts Three and Four because the indictment, read in conjunction with the discovery that the Government provided, adequately informs Defendant of the charges against him and are sufficient enough to avoid surprise at trial.

Defendant's Motion for a Bill of Particulars is, therefore, **DENIED.**

**D.      Government's Motion in Limine to Admit Expert Testimony [Doc. 99] and Defendant's Motion in Limine to Exclude Government's Expert and Request for a *Daubert* Hearing [Doc. 184]**

The Government moves this Court to admit testimony by Dr. Rohan Gunaratna, an expert with specialized knowledge in the field of international terrorism.  The Government asserts that Dr. Gunaratna's proposed testimony is reliable and relevant, as required by Rule 702 of the Federal Rules of Evidence, *i.e.,* it is based upon a reliable methodology that can be applied to the facts of this case, and should be admitted at trial.  *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Defendant objects to Dr. Gunaratna's testimony, asserting that it is not reliable as required by Rule 702, and requests a *Daubert* hearing.

In *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005), the Sixth Circuit sanctioned the use of expert testimony in a terrorism prosecution.  *See Also United States v. Sabir*, 2007 WL 1373184 at *9 (S.D.N.Y. 2007).  The expert witness in *Damrah* based his

testimony on press releases, newspaper articles, and a US government publication. The defendant sought an order to determine the admissibility of the proposed testimony (under Federal Rule of Evidence 702 and *Daubert*); the district court conducted a hearing, and subsequently denied Defendant's motion. The court reasoned that the witnesses's methodologies were reliable, and "[g]iven the secretive nature of terrorists, the Court can think of few other materials that experts in the field of terrorism would rely upon on." *Id.* Given that expert testimony is permitted in such case, the question for this Court becomes whether the expert testimony of Dr. Gunaratna requires a *Daubert* hearing.

> Pursuant to Federal Rule of Evidence 702,
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2)the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has interpreted Rule 702 as requiring the district court to perform a gate-keeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In *Daubert*, the Court listed the following factors that may bear upon the reliability of an expert's testimony: whether his theory or technique has been tested; whether the theory or technique has been subject to peer review and publication; whether the technique has a high known or potential rate of error; and whether the theory or technique enjoys general acceptance. *Id.* at 592.

When the proferred expert testimony is not scientific in nature, the district court must nevertheless still perform the gate-keeping function. In *Kumho Tire*, the Supreme Court held that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the

nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*

*Tire Co.*, 526 U.S. at 150.  Thus, *Kumho* interprets *Daubert* as neither a rigid template nor a

definitive checklist because so much depends on the facts of each particular case.

In *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001), the Sixth

Circuit discussed the need for flexibility in applying *Daubert* factors to non-scientific expert

testimony.  The court relied upon *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir.), *cert.*

*denied*, 521 U.S. 1127 (1997), noting:

> [I]f [the Daubert] framework were to be extended to outside the scientific realm,
> many types of relevant and reliable expert testimony–that derived substantially from
> practical experience–would be excluded.  Such a result truly would turn *Daubert*, a
> case intended to relax that admissibility requirements for expert scientific evidence,
> on its head.

Thus, this Circuit has been hesitant to exclude non-scientific testimony based on a rigid

application of *Daubert*.

It is within this framework that this Court examines the need for a *Daubert* hearing.

Relying on this Circuit's holding in *Barreto*, this Court undertakes a flexible approach in

applying *Daubert* to testimony concerning world terrorism – a non-scientific field.

Prior to the case, *sub judice*, Dr. Gunaratna himself has testified twice as an expert as to

world terrorist groups.  In 2002, he testified in *United States v. Lindh*, 227 F. Supp. 2d 565 (E.D.

Va. 2002) (first post-9/11 case prosecuted by US Justice).  In 2004, Dr. Gunaratna testified in

*United States v. al Hussayen*, Cr. No. 03-048-C-EJL (D. Idaho 2004).  Additionally, Dr.

Gunaratna has spent the majority of his career authoring/editing twelve books about the inner

workings of world terrorist groups, exclusive of numerous other journals and entries.

Notwithstanding Dr. Gunaratna's academic pedigree, Defendant sets forth a number of sources calling into question Dr. Gunaratna's credibility. None, however, postdate his testifying in *al Hussayen*. Additionally, Defendant disputes the reliability of Dr. Gunaratna's principles and methods by citing more sources, none of which postdates Dr. Gunaratna's testimony in *al Hussayen*. Last, Defendant questions Dr. Gunaratna's qualifications or credibility as an expert witness. Defendant notes that Dr. Gunaratna has had no pre-9/11 experience with the Arab-world, and moreover, that Dr. Gunaratna has been exposed for misrepresenting his credentials.

Nevertheless, despite Defendant's heavy allegations as to Dr. Gunaratna's credibility, Gunaratna has previously testified as an expert on world terrorism. Defendant's claim that "it would be virtually impossibly (sic) for an impressionable jury to sort fact from fiction" seems to address the complexity and uniqueness of the subject-matter, *not* the credibility of the Dr. Gunaratna and his expert testimony.

Having so determined the reliability of Dr. Gunaratna for the reasons set forth herein, this Court **GRANTS** the Government's Motion in Limine to Admit Expert Testimony, and **DENIES** Defendant's request for a *Daubert* hearing.

**E.      Defendant's Motion in Limine to Request a *James* Hearing and 1) Exclude Co-Conspirator Statements that Do Not Meet the Requirements of Rule 801(d)(2)(E) and 2) Exclude from Evidence Hearsay Within Hearsay Statements Made by Defendant [Doc. 103]**

According to the Parties' Motions there are two types of statements at issue. The first are statements made by Defendant's alleged co-conspirators. At this juncture, the Government has not stated that they intend to use such statements; if it does, however, offer such co-conspirator statements through FBI witnesses, these statements must meet the hearsay exemption in

801(d)(2)(E) of the Federal Rules of Evidence.  Rule 801(d)(2)(E) states that a "statement by a co-conspirator of a party during the course and in furtherance of a conspiracy" is not hearsay if offered against a defendant who was part of the conspiracy.  Thus, if the Government intends to introduce statements by Defendant's alleged con-conspirators, it must show that: (1) a conspiracy existed; (2) Defendant and declarant were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy.  *See Bourjarily v. United States,* 483 U.S. 171, 175-76 (1987); *United States v. Emuegbunam*, 268 F.3d 377, 395 (6th Cir. 2001).

The Fifth Circuit in *United States v. James*, 590 F.2d 575 (5th Cir. 1979) explained that a court may choose to hold a pre-trial hearing to determine whether each statement that the Government plans to introduce meets the requirements of 801(d)(2)(E).  The Sixth Circuit, however, states that a court may choose one of *three* methods when dealing with 801(d)(2)(E) statements: (1) hold a pretrial mini-hearing; (2) require the Government to meet its initial burden by producing non-hearsay evidence of conspiracy prior to determining admissibility of the hearsay statements; or (3) admit the evidence subject to a ruling on whether the Government has met the standards of 801(d)(2)(E) by a preponderance of the evidence at the close of the prosecution's case-in-chief.  *United States v. Vinson*, 606 F.2d 149, 152-53 (6th Cir. 1979).  This Court chooses the second *Vinson* method.  In order to establish Rule 801(d)(2)(E) requirements, the Government is required to proffer non-hearsay evidence of the alleged conspiracy prior to introducing co-conspirator statements.  Thus, Defendant's Motion for a *James* hearing is **DENIED.**  To address Defendant's specific concern, however, the Court notes that if it finds that any co-conspirator statement was made "outside the conspiracy" it will be excluded barring its admission under another hearsay exception.

The second category of statements includes those statements made by Defendant Abdi. In talking with Government officials, Defendant implicated certain co-conspirators and in doing so attributed various statements to those co-coconspirators. The Government seeks to introduce the statements of Defendant Abdi through the testimony of FBI officials. Doing so does not implicate Rule 801(d)(2)(E) because these are Defendant's statements; they are admissible as party admissions under Rule 801(d)(2)(A).

The admission of Defendant Abdi's statements that contain descriptions of his co-conspirators' statements, however, does raise Rule 805 implications. Rule 805 states that "hearsay within hearsay" must be excluded unless each separate statement either is not hearsay or falls under a hearsay exception. The first level of hearsay is the statements made by the co-conspirators to Defendant. The second level of hearsay is the statements Abdi made to the police. Each level must fall must fall within a hearsay exception in order to be admissible. The second level, Abdi's statements, as discussed above, are admissible under FRE 801(d)(2)(A). The question remains whether the first level of statements fall within an exception. The Court will need to make a statement-by-statement determination at trial. Thus, a motion in limine to exclude these statements is not appropriate in this instance. Defendant should make specific hearsay objections to each statement at trial. The Court will note, however, that these statements are likely either to: (1) fall within the admissibility ambit of Rule 801(d)(2)(E); or (2) not be offered for their truth, but rather be offered to show their effect on Defendant, and thus not qualify as hearsay. Nonetheless, the Court will hear Defendant's Rule 805 objections on a statement-by-statement basis at trial. Thus, Defendant's Motion is **DENIED**.

**F.      Defendant's Motion in Limine to 1) Exclude Computer Images, 2) Exclude Dissertation Text "Pillar of the Preparing for Jihad," 3) Exclude "Mall Bomb" and "Missile Plot" Statements, and 4) Exclude Physical Evidence [Doc. 104]**

In general, Defendant moves to have the first three categories of evidence above excluded under Federal Rule of Evidence 401 because they are not relevant, or in the alternative, under Federal Rule of Evidence 403 because their probative value is outweighed by the danger of unfair prejudice. Rule 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that all relevant is admissible unless otherwise provided by Act of Congress.

Rule 403 states that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Sixth Circuit reviews the admissibility of evidence under Rule 403 in the light most favorable to the prosecution and has stated "we maximize the probative value of evidence and minimize its potential prejudice to defendant." *United States v. Logan*, 250 F.3d 350, 368 (6th Cir. 2001). Evidence that prejudices a defendant only because it paints him in a bad light is not unfairly prejudicial under Rule 403. *Id.* (citations omitted).

### 1. Computer Images

The Government seized certain computer images taken from computers located at Defendant's cell-phone business. These images are snap shots of websites relating to al Qaeda and a variety of other organizations supporting Jihad against the United States. Defendant claims that the Government cannot establish a sufficient link between these images and

36

Defendant and, as such, are not relevant under Rule 401.  This Court finds that a sufficient link exists because these images were discovered at a business which Defendant owns, and are, therefore, relevant to the charges.  Though not required to, Defendant may argue that these images were not accessed by him at trial.

Defendant further argues that these images are not relevant to any fact in this case because they are available online to the "world population."  Given that Defendant is being accused of aiding al Qaeda, the fact that he has images on his computer regarding al Qaeda and other terrorist organizations is highly relevant.  Among other things, these Jihadi images are relevant to the existence of a conspiracy and to Defendant's intent and motivation.  Though not required to, Defendant may point out at trial that, like any member of the world population, Defendant was browsing these images for information purposes at trial.

Last, under Rule 403, Defendant argues that these images are more prejudicial than probative.  Defendant's argument lacks merit.  His main contention is that the probative value of this evidence is "extremely slight."  In a particularly esoteric sentence, Defendant argues that "these images do not prove anything, they simply are."  To the contrary, these images prove that someone using a computer at Defendant's business was accessing websites about terrorism.  Given that Defendant is charged with attempting to aid a terrorist organization, these images are probative.  In addition, given that this evidence goes directly to the crime charged and is not inflammatory, the Court finds little danger of *unfair* prejudice.  Thus, Defendant's Motion is **DENIED**.

2. Dissertation Text Entitled "Pillar of the preparing for Jihad"

The Government discovered a floppy disk in Defendant's home which contained text from a dissertation entitled "Pillar of the preparing for Jihad" written by Abdul Qader Ben Abdul Aziz. This text exhorts readers to prepare for Jihad against the "infidels." As above, this material is relevant in that it bears on the issue of whether Defendant had the intent to assist a terrorist organization in acts of Jihad against the United States. Defendant argues that it is more prejudicial than probative because it cannot be understood by an American lay jury. This Court finds that its probative value substantially outweighs whatever prejudice this text may cause Defendant given that it directly reflects his possible motive and intent for allegedly assisting al Qaeda. Defendant has had the dissertation since January 2005. These are questions of fact for the jury and are not reasons to exclude this evidence on relevance grounds. Thus, his motion to exclude it from evidence is **DENIED**. Because of the prejudicial nature of the text itself, however, the Court will not allow the Government to read from the text itself. The Government is limited to: (1) showing that the text was discovered in Defendant's home; (2) stating the title of the text; and (3) giving a brief description of the text's contents.

Because this text is written in Arabic, the Government hired an expert translator to translate the text into English. Defendant argues that if the Government intends to introduce and "Notes" or "Summaries" of the text that is not a direct translation, they must do through expert testimony that meets the requirements of Federal Rule of Evidence 702. The Government responds that it intends to introduce expert testimony regarding the interpretation and meaning of the dissertation. This Court orders that anything aside from a literal translation of the text of the dissertation must be introduced through expert testimony.

   3. <u>Defendant's Statements Concerning Shooting or Bombing and Ohio Shopping Mall</u>

Defendant asserts that the statements he made to investigators regarding his intent to bomb an Ohio mall are not relevant to the crimes charged in the indictment.  To the contrary, both plots are relevant and intrinsic to the Counts in the Indictment which charge Defendant with conspiracy to provide material support to al Qaeda.  The material support includes Defendant himself.  The fact that he allegedly intended to detonate a bomb in an Ohio mall makes it more likely that he planned to help terrorist causes in the United States, thus providing material support to them. The Indictment does not charge Defendant with conspiring to commit criminal acts only in foreign countries as Defendant suggests in his brief.  The Court will give appropriate jury instructions which inform the jury that the Government must have shown beyond a reasonable doubt that Defendant committed the crimes *charged in the Indictment* and not simply that he plotted to blow up an Ohio Mall.  Thus, Defendant's Motion to Exclude his statements is **DENIED**.

### 4.  Physical Evidence

The police obtained certain physical evidence from the home of one of Defendant's alleged co-conspirators.  The evidence consists of a flat-bed document scanner, a military range finder, a monscope, an address book, and a GPS wristwatch.  Defendant argues that this evidence is not relevant to the crime charged.  The Government asserts that it intends to prove at trial that Defendant provided a co-conspirator with stolen credit card numbers knowing that the co-conspirator intended to use these numbers to purchase equipment to be sent to and used by al Qaeda.  The Government states that the evidence will show that the aforementioned material seized at the house of the co-conspirator was to be sent to al Qaeda.  Most importantly, the Government asserts that Defendant himself told police where to find these items and generally

39

what these items would be. As such, this evidence is a relevant in that it shows that the alleged

conspirators, including Defendant, intended to provide "material support" to al Qaeda.  In

addition, introducing these material into evidence does not subject Defendant to any risk of

unfair prejudice.  Defendant's Motion to exclude is **DENIED**.

**G.      Defendant's Motion to Compel Disclosure of Grand Jury Transcripts [Doc. 147]**

Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), this Court may authorize disclosure of grand

jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury."  In *United States v. Short*,

671 F.2d 178, 184 (6th Cir. 1982), *cert. denied*, 457 U.S. 1119 (1982), the Sixth Circuit held that

the defendant must establish a particularized need in order to demonstrate a compelling necessity

for grand jury transcripts under Fed R. Crim. P. 6(e)(3)(C)(i).  *See also United States v. Proctor*

*& Gamble Co.*, 356 U.S. 677 (1958) (disclosure that was useful to defendant's preparation for

trial was not a "compelling necessity" that outweighs the "indispensable secrecy of grand jury

proceedings").  Thus, Defendant must demonstrate that the necessity constitutes more than a

general need.  *Short*, 671 F.2d at 184.  Examples of factors establishing a particularized need

include, but are not limited to, the nature of the case, the passage of time, and uncorroborated

conversations and oral statements; the *Short* court found none of these factors.  *Id.*  Thus, the

*Short* court held that a district court errs where it grants a pretrial disclosure of grand jury

transcripts absent a particularized need for such disclosure.

Defendant alleges that the Government charged him under unconstitutional versions of

since-amended statutes, and, therefore, the Indictment was insufficient.  Thus, Defendant argues

that these claims constitute grounds for disclosure under Rule 6(e)(3)(E)(ii) because the

40

transcripts are necessary to ascertain the basis of the Indictment. The Government argues that Defendant has not demonstrated a particularized need as to why his need for grand jury transcripts outweigh the need for secrecy in grand jury proceedings.

Defendant, in his argument supporting his request for disclosure, merely references the Court to his previous motions to dismiss. Simply stating that one has filed a motion to dismiss the Indictment, however, is not enough to demonstrate a particularized need. Furthermore, as set forth above, this Court has already rejected Defendant's argument that he was charged under unconstitutional statutes. Although some courts have found portions of the statute under which Defendant was charged unconstitutionally vague (e.g., the HLP Cases, which held that "personnel" as material support was vague as applied to plaintiffs who sought to provide independent support to the lawful, nonviolent activities of several FTOs), the statute as applied to Defendant was not held vague by any court. Even if the grand jury *did* consider the unconstitutional portions of the statute (and considered any such advocacy that Defendant may have independently provided to al Qaeda), the grand jury did not charge him with such conduct. Defendant has failed to demonstrate adequately how the grand jury's possible consideration of the unconstitutional portions of the statute under which he was charged constitute a need particular enough to warrant disclosure. Thus, because Defendant failed to demonstrate a "particularized need" for disclosure of the grand jury transcripts – as he failed to demonstrate adequate grounds for dismissal – this Court **DENIES** Defendant's Motion to compel disclosure of grand jury transcripts.

**H.** **Defendant's Motion to Compel Discovery Related to Informant Aydinbelge [Doc. 148]**

On February 21, 2007, Defendant filed this Motion asking this Court to compel discovery of Mr. Aydinbelge's contact information, criminal record, promises and any consideration given to him, recorded statements, evidence of psychiatric treatment, details of threatened prosecution, and all records related to proceedings against him. The Government responded on March 8, answering Defendant's requests. In its response, the Government stated that no statement of Mr. Aydinbelge was recorded. Defendant replied, asserting that the Suppression Hearing in this case contained comments concerning the FBI's interview(s) with Mr. Aydinbelge. These statements constitute the remaining issue for this Court.[6]

First, the Government has already provided to Defendant Mr. Aydinbelge's contact information. Second, this Court finds that Mr. Aydinbelge's criminal record is not pertinent to Mr. Abdi's defense at this time. Last, if there are recorded statements of Mr. Aydinblege, the Government is not compelled to disclose these recorded statements. Pursuant to Fed. R. Crim. P. 16(a)(2), ". . . nor does this rule authorize the discovery or inspection of statements by prospective government witnesses except as provided in 18 U.S.C. § 3500." Section 3500(a) (the "Jencks Act") reads,

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective government withess (other than the defendant) shall be the subject of . . . discovery . . . until said witness has testified on direct examination in the trial of the case.

In *United States v. Carter*, 621 F.2d 238, 239-40 (6th Cir. 1980), the Sixth Circuit faced a similar situation involving discovery of a conversation between a Government witness (whom

---

[6] In his April 4 Reply, Defendant also noted a discrepancy in the timeline of Aydinbelge's immigration history, and requested clarification as to this matter. The Government provided a Supplemental Notice Related to Defendant's Motion to Compel Discovery on June 19, 2007, noting that on or about May 15, 2007, the parties spoke and clarified the timeline.

appellant, in error, alleged to be an informant) and agents of the FBI.  Holding that the Government violated no obligation by not providing the statement of its witness prior to trial, the court reasoned: "The short answer is that the United States is generally under no duty to provide the statement of a government witness until that witness has testified on direct examination." *Carter* at 240.  *See United States v. Dark*, 597 F.2d 1097, 1099 (6th Cir. 1979); *United States v. Nickell*, 522 F.2d 684 (6th Cir. 1977); *United States v. Wilkerson*, 456 F.2d 57, 61 (6th Cir. 1972); *United States v. Condor*, 423 F.2d 904, 910 (6th Cir. 1970).

Just like in *Carter,* Mr. Aydinbelge is a prospective government witness, not an informant.  Therefore, pursuant to Rule 16 and the Jencks Act, the Government is not under any duty to disclose the statements of Mr. Aydinbelge at this time.

Thus, based on the clear language of Rule 16, and this Circuit's consistent application of the Jencks Act, this Court holds that the Government is not compelled to disclose Mr. Aydinbelge's statements unless and until he has testified on direct examination at trial.  Additionally, the Government has complied with its discovery duties insofar as it has provided Defendant with Mr. Aydinbelge's contact information.  Therefore, for the foregiong reasons, this Court **DENIES** Defendant's Motion for an Order Compelling Discovery.

I.      **Defendant's Second Motion to Compel Discovery [Doc. 150]**

On April 25, 2005, Defendant filed a Motion to Compel Discovery.  The Government responded on May 5, 2005.  On February 22, 2007, Defendant filed his Second Motion to Compel Discovery, and the Government responded on March 5, 2007.  Defendant replied to the Government's Response on April 4, 2007.

In his [First] Motion to Compel Discovery, Defendant requests 54 items of discovery from the Government.  The Government responded that it had already provided these materials to Defendant on January 10, 2005 in compliance with Fed. R. Crim. P. 16.  Additionally, the Government acknowledges its continuing duty to afford additional discovery if and when discoverable evidence is developed or becomes available.

In his Second Motion to Compel Discovery, Defendant reiterates its previous requests, and, in addition, requests results of Defendant's polygraph examination.  The Government responded, directing the Court to its previous response regarding exculpatory evidence and materials.  Regarding the polygraph examination, the Government claims that it had previously submitted the results to Defendant.  In his Reply, Defendant notifies the Court that Government's submission of the results were incomplete, and therefore, requests this Court to compel Government's production of the polygraph examination results in their entirety.  For the reasons set forth herein, this Court **GRANTS** in part and **DENIES** in part Defendant's Motions to Compel Discovery.

Pursuant to Rule 16(a) (government's disclosure), the following items, *inter alia*, are subject to disclosure: Defendant's oral statement, defendant's written or recorded statement, defendant's prior record, documents and objects material to preparing the defense, reports of examinations and tests, and expert witnesses.  Defendant has requested, essentially, all evidence concerning the subject matter of the Indictment.  As the Government notes, "a blanket demand for all evidence in the government's possession relating to the subject matter of the indictment does not meet the materiality requirement" for Rule 16(a) disclosure.

The first category of Defendant's requests can be categorized as pretrial discovery of witnesses's names, identities, statements, Jencks Act, *Brady*, or *Giglio* materials (items #1-10; 47-52 of Defendant's [First] Motion to Compel Discovery).  While it acknowledges its duty under *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83 (1963) to reveal impeachment evidence for all government witnesses, as well as evidence material to guilt or punishment of the defendant, the Government is not required to produce such material as part of pre-trial discovery.  *See United States v. Condor*, 423 F.2d 904, 911 (6th Cir.), *cert. denied*, 400 U.S. 958 (1970) (*Brady* holds only that suppression of evidence favorable to defendant *at trial* is denial of due process; it does not require government to determine *prior to trial* what evidence will be favorable to the accused) (emphasis added).

In addition to setting forth items that must be disclosed by the Government, Rule 16(a) specifically excludes from pre-trial discovery " . . . statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  The requirement for providing a defendant statements made by a government witness is as follows:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.  If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b).  Thus, it is clear that a demand prior to trial for witnesses' statements or the opportunity to interview witnesses is not within the ambit of either Rule 16 or 18 U.S.C. § 3500. *See United States v. Algie*, 667 F.2d 569 (6th Cir. 1982).  Therefore, because Defendant's requests for discovery exceed the scope of Rule 16, *Brady*, and *Giglio,* this Court **DENIES** Defendant's Motion to Compel Discovery of these items at this time.

The second category of Defendant's requests can be summarized as information regarding terrorist camps, conflicts, and/or organizations (items #12-32). The Government notes that evidence of Defendant's connections to terrorism will be presented at trial through evidence supplied in discovery and witnesses called. This Court points the Defendant to sources of public information, or his client. Therefore, because Defendant's requests for discovery exceed the scope of Rule 16, this Court **DENIES** Defendant's Motion to Compel Discovery of these items at this time.

Third, Defendant makes a number of requests to which the Government specifically objects. These include the following: Typewritten copies of agents' notes (#42), an unredacted ICE NIIS printout (#43), an INS manual and all travel departures (#44), and all expert witness material (#45). Again, items 42-44 exceed the parameters of Rule 16, and this Court **DENIES** Defendant's Motion to Compel Discovery of these items at this time. The Government must provide expert witness material pursuant to Rule 16(a)(1)(G); with respect to such request, Defendant's Motion is **GRANTED**.

The last category of Defendant's requests are items previously provided by Government in its Discovery Letter No. 1, or in previous discovery disclosures (items 11, 33-41, 46). Because these items have already been provided, Defendant's Motion to Compel Discovery of these items is now **MOOT**.

In its Response to Defendant's Second Motion to Compel Discovery, the Government apprises the Court of its disclosure to Defendant of the polygraph results in Discovery Letter No. 1. Defendant concedes this point, but also notes that the results are incomplete. As a result,

Defendant moves this Court to compel disclosure of the remaining results as they are both exculpatory evidence and within the scope of Rule 16.

Fed. R. Crim. P. 16(a)(1)(F) speaks specifically to the disclosure requirements for reports of examinations and tests:

> Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test of experiment if:
> (i) the item is within the government's possession, custody, or control;
> (ii) the attorney for the government knows–or through due diligence could know–that the item exists; and
> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

The Polygraph Examination Worksheet indicates two interviews, one on December 6, 2003, and one on December 7, 2003; the Government provided only the former to Defendant. Additionally, Defendant points to the August 25-26, 2005 Suppression Hearing transcript, which verifies that the " . . . actual examination, if you will, not the (sic) just the questioning . . . was on December 7, 2007." (pg. 363 lines 5-6, 16).  Therefore, Defendant argues, based on this transcript, the results submitted by the Government are incomplete.  Moreover, Defendant contends that this omission, intentional or otherwise, constitutes exculpatory evidence for purposes of the *Brady* doctrine.

There is no question that results of a polygraph examination constitute a "scientific test." Moreover, based on what the Government has already disclosed to Defendant, combined with its willingness to stipulate to the results of the examination, this Court has reason to believe that the Government is in possession, custody, or control of the December 7, 2003 interview. Furthermore, based on the Government's motions, it is clear to this Court that an attorney for the Government knows that this item exists.  Additionally, this Court finds that these results are

47

material to preparing the defense.  Therefore, because the polygraph examination results fall within the ambit of Rule 16(a)(1)(F), this Court **GRANTS** Defendant's Motion to Compel Discovery as to the polygraph examination results.

For the foregoing reasons, this Court **GRANTS** in part and **DENIES** in part Defendant's Motions to Compel Discovery.

**J.      Defendant's Motion to Compel Production of Exhibit and Witness Lists [Doc. 151]**

On February 22, 2007, Defendant filed this instant motion moving for an order instructing the Government to supply Defendant with an exhibit list.  Subsequently, on March 6, 2007, the Government responded that it previously filed an exhibit list on September 7, 2005 (Doc. 97).  Therefore, because the Government has duly responded, Defendant's motion to compel an exhibit list is **MOOT**.

Nowhere in Fed. R. Crim. P. 16(a) (government's disclosure) does the language mandate disclosure of names and addresses of witnesses prior to trial.  *See United States v. Dark*, 597 F.2d 1097 (6th Cir. 1979), *cert. denied* 100 S.Ct. 267 (1979).  Moreover, in a non-capital case such as this, the defendant has no constitutional right of disclosure of the government's witness list.  *United States v. Germain*, 411 F. Supp. 719, 725 (S.D. Ohio 1975).

Prior to *Dark* and *Germain*, the Sixth Circuit ruled that "it is firmly established that defense counsel is not entitled to know before trial who will testify for the government."  *United States v. Condor*, 423 F.2d 904, 910 (6th Cir. 1970).  In opposition to this position of the Sixth Circuit, attempts were made to amend Rule 16 so as to require pretrial disclosure of the names and addresses of prospective witnesses.  In 1975, however, Congress, but not without considerble debate, rejected the proposal, reasoning that such disclosure could encourage

48

pernicious influence of witnesses prior to trial.  *See* H.R. REP. NO. 94-414 at 11-12 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 713, 716-17.

Subsequent to the failure of the witness disclosure amendment, the Sixth Circuit reaffirmed its position previously set forth in *Candor*: ". . . defense counsel [is] not entitled to know, in advance of trial, who was going to testify for the government."  *Dark*, 597 F.2d at 1099.  *See United States v. Adams*, 772 F.2d 908, 908 (6th Cir. 1985); *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984); *United States v. Ward*, 722 F. Supp. 1523, 1524 (S.D. Ohio 1989); *United States v. Jones*, 678 F. Supp. 1302, 1303 (S.D. Ohio 1988).  Therefore, based on the weight of the Sixth Circuit's and this district's authority, Fed. R. Crim. P. 16(a) does not require the Government to disclose the names and addresses of witnesses prior to trial.

Defendant misapplies the unambiguous language of *Dark* in arguing that this Court should compel the Government's disclosure of its witness list at least two weeks prior to trial.  As authority for his argument, Defendant cites the Second Circuit for the proposition that the trial judge may compel disclosure of the identities of government witnesses when the defense's need for disclosure outweighs the possible dangers accompanying disclosure.  *See United States v. Cannone*, 528 F.2d 296, 301-02.  Although *Cannone* is not controlling, and this Court is not persuaded to accept Defendant's invitation to contravene the weight of authority in the Sixth Circuit, this Court has wide superintendence power to direct discovery matters.  *See Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3d 392 (5th Cir. 2000); *Duke v. University of Texas at El Paso*, 729 F.2d 994 (5th Cir.1984) ("Because discovery matters are committed almost exclusively to the sound discretion of the trial Judge, appellate rulings delineating the bounds of discovery under the Rules are rare. . . ." and noting that discovery rules have a "liberal

spirit."). Thus, pursuant to this Court's normal practice, and in order to prevent unnecessary delay at trial, this Court orders the Government to identify witnesses and disclose *Jencks* material to Defendants at least one day prior to the witness' testimony, unless the Government represents to this Court that doing so would jeopardize the safety of the witnesses.

For the reasons set forth herein, this Court **GRANTS in Part and DENIES in Part** Defendant's Motion to Compel Production of Exhibit and Witness Lists.

**K.      Defendant's Motion for Reconsideration of Judicial Notice of Al Qaeda's Designation as a Foreign Terrorist Organization [Doc. 159]**

On February 22, 2007, the Government filed a motion asking this Court to take judicial notice that al Qaeda is a terrorist organization. On February 28, 2007, before Defendant had a chance to respond, this Court granted the Government's motion. Defendant chastises this Court for entering an order without first hearing his response.

The Court has read Defendant's response and heard his oral arguments pursuant to Rule 201(e) of the Federal Rules of Evidence. The Court now reaffirms its February 28, 2007 order. For the reasons stated in the Government's motion, this Court takes judicial notice that, as of October 8, 1999, al Qaeda is a designated foreign terrorist organization.

**L.      Defendant's Motion in Limine to Take Judicial Notice that the United States Was Not "At Peace" with Somalia [Doc. 173]**

FRE 201 provides, in relevant part:

> (b) Kinds of facts: A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

> (c) When discretionary: A court may take judicial notice, whether requested or not.

> (d) When mandatory: A court shall take judicial notice if requested by a party and supplied with the necessary information.
>
> (e) Opportunity to be heard: A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

Defendant has not proffered evidence, and the Court cannot find any, that suggests that the United States is "not at peace" with Somalia.  The only information provided in support of this motion is a summary of Somalia from the World Factbook.  This source does not provide any information that suggests that the United States is not or was not "at peace" with Somalia as a nation.  There is no declaration of war against Somalia nor is there any other evidence of open hostility between the United States government and that of Somalia.  At oral argument, Defendant did not adequately supplement the record with information sufficient to show that the United States was "not at peace" with Somalia.  Thus, this fact is not judicially noticeable under FRE 201(b). Defendant's Motion **is DENIED**.

**M.** **Defendant's Motion in Limine to Exclude Statements and Evidence; and Preclude Evidence from the Jury Room [Doc. 174]**

Defendant moves to exclude the following materials from being introduced at trial:

(1) A letter found in Defendant's wallet (the "Letter")

(2) Defendant's statements made during his immigration hearing on March 9, 2004.

("Statements")

(3) Letter and Testimony of Inmate Incarcerated with Defendant (the "Inmate Letter")

(4) Defendant's Head-Shake Indicating that "He Wants to Hurt Someone"

51

(5) Expert Testimony Relating to Terrorism[7]

(6) Defendant's Statement's Regarding the Credit Card Numbers He Allegedly Gave to His Co-Conspirator

(7) Statement of Facts that Accompany's Mr. Farris' Conviction[8]

(8) Demonstrative Evidence

Defendant asserts that the Letter is not relevant under Rule 402 of the Federal Rules of Evidence.  Defendant is incorrect.  The Letter is Defendant's last will and testament and it indicates Defendant's intent to travel to conflict zones in Afghanistan.  It is relevant in that it tends to show that Defendant may have been planning on committing an act which may have lead to his down death.  It also evinces his state of mind.

Defendant asserts that the Statements should be excluded because they violate the Fifth Amendment and because they are not reliable as Defendant was mentally ill when he made these statements.  First, there is no Fifth Amendment issue here; Defendant made the statements voluntarily and are admissible as statements against interest.  Prior testimony is routinely allowed into evidence in a subsequent trial.  *See, e.g., United States v. McClellan*, 868 F.2d 210 (7th Cir. 1989). Second, there is no evidence to indicate that Defendant was mentally ill when he made those particular statements.  Defendant may, but is not required to, argue the credibility or reliability of these statements to the jury at trial.

In the Inmate Letter, an inmate stated that he heard Defendant state that all Americans were evil and should be murdered, that Defendant knew how to make bombs with cell-phones,

---

[7] The admission of expert testimony is fully discussed in Section D above.

[8] The Government states that it will not be offering this statement; therefore, Defendant's Motion is MOOT with respect to such evidence.

etc.  Defendant states that these statements are irrelevant.  To the contrary, these statements go directly to motive and, as such, are relevant and highly probative.  If this information is introduced at trial without Defendant's opportunity to cross-examine the inmate, this Court will first address any *Crawford* challenges.

There is not enough information in the motions to rule on the "head shaking" objection. This Court, therefore, reserves its ruling and instructs Defendant to raise its objection at trial should this information become relevant.

Defendant's Statements regarding the credit card numbers he allegedly gave to his co-Conspirator is relevant in that it shows Defendant's intent to materially aid a terrorist organization because he allegedly gave these numbers with the belief that his co-conspirator would use them to buy supplies to aid al-Qaeda.

Defendant also asks this Court to exclude demonstrative evidence because its possible prejudicial effect outweighs its probative value.  The demonstrative evidence in this case includes the copies of a Battle Hood and a Fitness Video which are allegedly similar to the ones ordered by Defendant.  Also, the Government plans to introduce a copy of a Refugee Travel Document which is similar to the one used by Defendant.  These items are neither prejudicial or sensational.  They will be admitted subject to the prosecution establishing foundation and any limiting instruction provided by this Court.

Defendant also asks this Court to exclude any evidence from entering the jury room. Trial courts have broad discretion regarding whether to allow evidence into the jury room.  *See, generally, United States v. Scaife*, 749 F.2d 338, 347 (6th Cir. 1984).  Defendant argues that allowing the evidence into the jury room would be of "little assistance to the trier of fact."  This

Court's standard practice is to allow the jury to examine any exhibits marked and entered into evidence.  Defendant has not offered a substantial justification for this Court to deviate from its common practice.  Summaries and demonstrative exhibits are only aids to understanding the evidence, and the Government concedes that these types of materials should not go back to the jury room.  Subject to this exception, Defendant's Motion is **DENIED**.  Defendant is advised to make specific objections regarding the relevance of these piece of evidence during trial as he sees necessary.

**N.      Defendant's Motion in Limine to Compel Work Product Provided to Government's Expert [Doc. 176]**

Pursuant to Fed. Rule Crim. P. 16(G)(2),

> (2) Information Not Subject to Disclosure. . . . [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

This Court finds that all work product the Government has provided to its expert, Rohan Gunaratna, falls within the scope of subsection (G)(2).  Under this rule, Defendant may not require this Court compel discovery of the Government's work product provided to its expert witness.[9]  Therefore, this information is not subject to disclosure under Fed. R. Crim. P. 16(G)(2).

Defendant nevertheless relies on *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006) for the proposition that the corresponding *civil* discovery statute requires disclosure of all

---

[9] The Government notes it has provided Defendant with the CV of its expert.  Then, the Government filed a motion on August 3, 2005 attaching a summary of its expert's testimony, his qualifications, and how this testimony would be helpful to the jury.  The Government cites this in support of its contention that its expert was provided the same discovery materials as Defendant.

work product related to testifying experts.  This case is not only not controlling, it is entirely irrelevant to the instant matter.  *LFG* interprets the civil discovery rule (Fed. Rule Civ. P. 26(a)(2)(A); *United States v. Abdi* is a criminal case, and therefore, deals with the *criminal* discovery rule.  Therefore, this Court, pursuant to Fed. Rule Crim. P. 16(G)(2), **DENIES** Defendant's Motion to Compel Work Product Provided to Government Expert.

**O.      Defendant's Motion in Limine to Dismiss on Newly Discovered Grounds [Doc. 177] and Defendant's Motion in Limine to Limit and Exclude Legal Arguments [Doc. 179]**[10]

Defendant moves this Court to limit and/or exclude several legal arguments asserted by the Government.  Specifically, Defendant asserts that this Court should: (1) limit the object of the conspiracies in Counts One and Two to ensure Defendant is not tried on separate conspiracies not charged; (2) exclude the overt act in Count One because it is outside the statute of limitations; (3) exclude any argument that other overt acts can be used to find guilt under Count One because overt acts under § 371 must be alleged in the Indictment; (4) exclude the alleged overt act in Count Two because a § 2339B conspiracy cannot pre-date designation; (5) exclude argument that the conspiracy in Count Two began in "late 1997 or early 1998" because a § 2339B conspiracy cannot pre-date designation; (6) exclude argument based on "false statements" or perjury as to Counts Three and Four because 18 U.S.C. § 1546(a) is a forgery statute; and (7) exclude argument that the term "valid" was implied in the Refugee Travel Document because it does not comport with evidence.  For the following reasons, Defendants arguments are entirely without merit.

---

[10]      Defendant's one-page Motion to Dismiss on Newly Discovered Grounds is wholly based on arguments set forth in his Motion in Limine to Limit and Exclude Legal Arguments.  Therefore, this Court will address the Motions together.

### 1. Object of Conspiracies in Counts One and Two

Defendant seeks to limit the object of the alleged conspiracies to two conspiracies to provide himself as "personnel" in the form of traveling to Ogaden, Ethiopia for purposes of obtaining military-style training in preparation for unlawful terrorist acts.  In essence, Defendant asks this Court to limit the charges to the *overt act* alleged in relation to Counts One and Two.  Counts One and Two, however, do not charge that Defendant conspired to travel to a training camp; they charge that Defendant conspired to provide material support and resources to terrorists and terrorists organizations.  The overt act alleged does not represent the object of the conspiracy, but rather, is one act (out of possible many) done in furtherance of or to effect to the object of the conspiracy.  *See United States v. Stone*, *323* F.Supp.2d 886, 889 (E.D. Tenn. 2004) (citing *United States v. Cohen*, 145 F.2d 82, 94 (2d Cir.1944) ("It has been said over and over again that the conspiracy, not the overt act, is the 'gist' of the crime.")); *Marino v. United States*, 91 F.2d 691, 694 (9th Cir. 1997) (explaining that an overt act "is something apart from conspiracy and is an act to effect the object of the conspiracy, and need be neither a criminal act, nor crime that is object of conspiracy").  Nothing in the Indictment indicates that the objective of either alleged conspiracy is limited to obtaining military training.  The Government may well offer evidence of other overt acts and/or ways in which Defendant may have provided material support to terrorists.  This Court will not limit the scope of the alleged conspiracy, of which the Grand Jury found probable cause, to the overt act provided.

### 2. Count One's Overt Act and Statute of Limitations

Because § 2339A (the relevant statute in Count One) did not include a conspiracy offense at the time of Defendant's indictment, Count One is properly charged under § 2339A *and* § 371, which requires proof of an overt act in furtherance of the conspiratorial scheme.  The Parties

56

agree that a five-year statute of limitations applies to § 371.  Because the sole overt act alleged in the Indictment occurred on April 27, 1999, and the Indictment was issued more than five years later on June 10, 2004, Defendant asserts that Count One should be dismissed, or in the alternative, this Court should exclude the alleged overt act and preclude the Government from using any other overt act to prove Count One.

First, the inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts so long as they are in furtherance of the conspiracy and there is no prejudice the Defendant.  *See United States v. Frank*, 156 F.3d at 337-38 ("the overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment so longa s there is no prejudice to the defendant"); *United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn 2004) (explaining that jury is not limited to considering only the overt acts alleged in indictment in determining whether government has proven overt act element of conspiracy, but rather may consider evidence of overt acts presented at trial that fit within the scope of the conspiracy).  Therefore, this Court will not preclude the Government from presenting evidence of other overt acts to prove Count One.

Second, merely because an overt act occurs outside the five year statute of limitations of a violation of § 371, the Government may nevertheless prove such act for the purpose of demonstrating the nature and scope fo the conspiracy.  *See United States v. Saneaux*, 365 F. Supp. 2d 493, 505 (S.D.N.Y. 2005) ("It is well settled that a conspiracy charge is timely filed if only one of a number of overt acts occurred within five years of the indictment; inherent in that rule is the government's ability to plead and prove earlier overt acts.").

The question then remains: given that the Government may prove (a) overt acts other than those alleged in indictment and (b) overt acts that fall outside of the statute of limitations,

does an indictment only satisfy the statute of limitations if it includes an overt act that falls within the statute of limitations?  This Court concludes that the answer is no.  The Sixth Circuit in *United States v. Smith*, 197 F.3d 225 (6th Cir. 1999), rejected the claim that the limitations period is only measured from the latest overt act alleged in the indictment.  There, as here, the indictment was filed more than five years after the date of the last event alleged as an overt act in the indictment.  The court noted, however, that the purpose of giving notice – which is usually satisfied through overt acts and statute of limitations – was satisfied by the allegation that the conspiracy ran to a date that fell within the five-year period before the indictment, and that timely acts in furtherance of the conspiracy were alleged in the substantive counts.

The Second Circuit reached the same conclusion in *United States v. Frank*, 156 F.3d 332, 338-39 (2nd Cir. 1998):

> The appellants argue that, even if the government may satisfy the overt act element of § 371 by proof of an act not explicitly charged in the indictment, the statute of limitations element may only be satisfied by an act that is explicitly charged. According to the appellants, this is an issue of first impression in this Circuit.
>
> We see no reason to devise a special rule for the statute of limitations requirement that is different from the rule governing the overt act element. In the matter of the statute of limitations, as in the case of overt acts generally, our principal concerns are that a defendant have fair and adequate notice of the charges against him and have suffered no undue prejudice as a result of the proof offered. . . . In other words, the statute of limitations may be satisfied by proof of an overt act not explicitly listed in the indictment, as long as a defendant has had fair and adequate notice of the charge for which he is being tried, and he is not unduly prejudiced by the asserted variance in the proof.

Here, similarly, Defendant was given adequate notice.  As in *Smith*, Count One asserts that the conspiracy ran to a date within five years of the filing of the Indictment – filed on June 10, 2004, it alleged a conspiracy existing through November 27, 2003.  Moreover, the Indictment described several acts within the statute of limitations (e.g., the alleged possession

58

and use of a travel document obtained through false statements on June 11, 1999 and March 25, 2000) that may have been listed as overt acts for Count One.  If it was error to fail to list a few of the acts alleged in Counts Three and Four under Count One, "then it was clearly an error of mere form, not substance.  A pleading defect, and nothing more, should not bar the prosecution of [Defendant] when a reading of the indictment as a whole gives notices that the conspiracy lasted until" November 27, 2003.  *Smith*, 197 F.3d at 228.  Defendant can hardly claim that he is unaware that the conspiracy fell within the limitations period.

### 3.   Conspiracy before al Qaeda Designated as FTO

Defendant argues that this Court should exclude the overt act alleged in Count Two (which is the same overt act alleged in Count One) because such act allegedly occurred on April 27, 1999, months before al Qaeda's designation as an FTO, and thus months before, Defendant asserts, a conspiracy could have been formed.  For the same reasons, Defendant argues that this Court should exclude argument that the conspiracy alleged in Count Two began in "late 1997 or early 1998" because al Qaeda was not designated an FTO until October 1999.

As discussed above in addressing Defendant's Motion to Dismiss Count Two for Failure to State an Offense – and as admitted by Defendant in his brief – to establish the offense alleged in Count Two, the Government must prove that Defendant knowingly gave material support to a FTO knowing that such organization was designated an FTO *or* knowing that the group was engaged in terrorism or terrorist activity.  Therefore, the fact that al Qaeda was not designated at the time of the alleged overt act does not mean that Defendant escapes the parameters of § 2339B.  Indeed, although a conspiracy to provide material support to al Qaeda would not have been an offense under § 2339B on April 27, 1999 because it had not yet been designated an FTO, Defendant may still have provided material support to al Qaeda knowing that the

59

organization engaged in terrorism or terrorist activity, regardless of its designation of an FTO.

Therefore, while the jury will be instructed that in order to find Defendant guilty of Count Two it

must find that the conspiracy existed *after* al Qaeda's designation, the overt act predating the

date of designation is admissible to demonstrate the formation of the conspiracy, its nature and

scope, and Defendant's intent and purpose in participating in it. *United States v. Marchesani*,

457 F.2d 1291, 1294-95 (6th Cir. 1972) (explaining that it is permissible to show that a fraudulent

agreement was entered before the enactment of a statute so long as the government also proved

overt acts showing that the conspiracy continued beyond effective date of statute).

### 4.  Counts Three and Four: Forgery versus Perjury

Defendant moves this Court to dismiss Counts Three and Four, charged under 18 U.S.C.

§ 1546(a), or in the alternative, exclude argument that these counts are based on the making of

false statements, because Defendant asserts that § 1546(a) is a forgery – and not a perjury –

statute.  Defendant's argument is borderline frivolous, as it is entirely without merit.

Section 1546(a) – which is captioned, "Fraud and misuse of visas, permits, and other

documents" – reads, in pertinent part, as follows:

> *Whoever knowingly* forges, counterfeits, alters, or falsely makes any immigrant or
> nonimmigrant visa, permit, border crossing card, alien registration receipt card, or
> other document prescribed by statute or regulation for entry into or as evidence of
> authorized stay or employment in the United States, or utters, *uses, attempts to use,*
> *possesses, obtains, accepts, or receives any such* visa, permit, border crossing card,
> alien registration receipt card, or other *document prescribed by statute or regulation*
> *for entry into or as evidence of authorized stay or employment in the United States*,
> *knowing it to be* forged, counterfeited, altered, or *falsely made, or to have been*
> *procured by means of any false claim or statement*, or to have been otherwise
> procured by fraud or unlawfully obtained [shall be guilty of a crime.]

18 U.S.C. § 1546(a) (emphasis added).  While forgery is *one way* in which one can violate

§ 1546(a), it is certainly not the only way.  The statute, by its plain language, clearly prohibits

one from possessing, obtaining, receiving, or using a travel document that was procured by means of any false claim or statement.  The Indictment alleges just this.  Specifically, Count Three alleges that Defendant possessed, obtained, or received a Refugee Travel Document that was procured by means of false statements.  Specifically, the Government states that, in order the obtain the Travel Document, Defendant claimed that he had been granted valid asylee status (necessary to obtain such Document), when in fact Defendant knew that the statements in his asylum application were entirely false.   Count Four alleges that Defendant used the Travel Document, again knowing that it was procured by means of false statement because he falsely represented that he had valid asylee status.  Such activities, if proven, fall squarely within the ambit of 1546(a).

### 5.  The Term "Valid" as Used in Counts Three and Four

Defendant moves this Court to exclude argument as to whether his asyum status was "valid" because it "does not comport with the evidence."  Again, Defendant's argument is without merit.

As discussed above, the relevant portions of Counts Three and Four allege that Defendant "represent[ed] that he had been granted valid asylee status, when, in fact, as the defendant then well knew, his asylum application had been procured by means of false statement."  Defendant argues that, in filling out the application for a Refugee Travel Document, Defendant merely checked the box that corresponded to the following statement: "I now hold U.S. refugee or asylee status and I am applying for a Refugee Travel Document."  Defendant asserts that this was a true statement at the time it was made.  Defendant goes on to argue that the charges are "more tenuous" because Defendant is not charged with checking such box, but rather with possessing and using a document that he received as a result of checking that particular box.

61

Defendant's observation is correct, yet, this Court fails to see the logic in Defendant's argument. He is charged with possessing and using a Refugee Travel Document that he received after checking a box that represented that he had asylee status. If the evidence shows that he in fact did not have *valid* asylee status (i.e., asylee status based on truthful statements), he did not have asylee status at all. Checking the particular box stating that he did have asylee status would have been a false statement, for which Defendant is property charged under § 1546.

Based on the foregoing reasons, Defendant's Motions are **DENIED**.

**P.     Defendant's Motion in Limine to Interlineate Indictment Before Reading or Presenting it to the Jury [Doc. 180]**

Defendant moves this Court to interlineate the Indictment in the following manner: (1) replace the term "violent Jihad" in the overt acts listed in Counts One and Two with the statutory language from § 956; (2) dismiss the "overt act" in Count Two and limit the conspiracy to traveling to obtain military-style training; and (3) replace the words "from in or about late 1997 or early 1998" in Count Two with "from on or after October 8, 1999" to reflect the date of al Qaeda's FTO designation.

This Court addressed and rejected Defendant's request to limit the conspiracy to the overt act in Count Two in its analysis of Defendant's Motion to Limit and Exclude Legal Arguments, above. Defendant merely asserts the same arguments here, and they are again without merit. Similarly, this Court addressed and rejected Defendant's request to limit Count Two to the time period after al Qaeda was designated an FTO. This Court will, however, instruct the jury that in order to find Defendant guilty of Count Two it must find that the conspiracy existed *after* al Qaeda's designation.

Defendant's request to replace the term "violent Jihad" in the overt acts listed for Counts One and Two is also without merit. The overt acts alleged in Counts One and Two state that on

62

April 27, 1999, Defendant planned to travel to Ethiopia for the purpose of obtaining military-style training in preparation for violent Jihad.  Defendant now asks the Court to replace "violent Jihad" in Count One with the statutory language of § 956 (part of the substantive charge in Count One), so that the overt act would state that Defendant planned to travel to Ethiopia for the purpose of obtaining military-style training "in preparation for killing, kidnaping, maiming, and injuring persons and to damage and destroy property in a foreign country."  Similarly, for Count Two, Defendant asks this Court to rewrite the overt act so that it states that Defendant planned to travel to Ethiopia for the purpose of obtaining military-style training "in preparation for committing acts of terrorism in violation of 8 U.S.C. § 1182(a)(3)(B) and/or 22 U.S.C. § 2656f(d)(2)" (which define terrorist activities).

Defendant argues that "violent Jihad" may not be an unlawful act and, as such, Counts One and Two should be dismissed or altered to allege an unlawful act. Once again, Defendant confuses the overt act with the conspiracy charge.  Defendant is not narrowly being charged with conspiring to travel to obtain military-style training in preparation for Jihad; instead he is being charged with providing material support to terrorists, which may *include* his plans to obtain such training.  Even assuming, *arguendo*, that the training itself asserted in the overt act is legal, the Government may show that Defendant undertook it in order to further terrorist activities in violation of 18 U.S.C. §§ 2339A and 2339B.  "It is a basic tenet of conspiracy law that an overt act in furtherance of a conspiracy need not be illegal itself." *United States v. Jerkins*, 871 F.2d 598, 603-03 (6th Cir. 1989).  Therefore, whether the overt act alleges a lawful or unlawful act, at this point, is of no consequence to the sufficiency of the Indictment.

Defendant's Motion is, therefore, **DENIED**.

**Q.** **Defendant's Motion in Limine Regarding (1) CIPA Filings and Discovery; and (2) Discovery Obtained Pursuant to FISA [Doc. 181]; Defendant's Motion in Limine to**

63

**Compel Discovery of Documentation Required Under "FISA" [Doc. 42];**
**Defendant's Motion to Protect Defense Counsel's Right to Privacy [Doc. 59]**

Defendant moves to exclude all prejudicial discovery and motions filed pursuant to the Classified Information Procedure Act ("CIPA") or to compel discovery regarding these materials.  Defendant also moves to exclude all discovery obtained pursuant to the Foreign Intelligence Surveillance Act ("FISA").  In Document 42, Defendant also moves to exclude all discovery pursuant to FISA.

Defendant objects to the "secretive procedures" under CIPA which allow the Government to file certain motions and evidence under seal, citing law review articles as the basis of his authority. The constitutionality of CIPA has been upheld by every court that has considered the issue.  *See, e.g., United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984); *United States v. Wilson*, 721 F.2d 967, 976 (4th Cir. 1983); *United States v. Collins*, 720 F.2d 1195, 1200 (11th Cir. 1983).  The Government, however, is required to share the information and documents filed pursuant to CIPA with defense counsel, as long as he obtains the necessary security clearance.  There is ample precedent supporting the position that defense counsel must obtain security clearance if he wishes to view classified CIPA materials.  *See* 18 U.S.C. App. 3 Sec. 9., *United States v. Al-Arian*, 267 F. Supp. 2d 1258, 1266 (M.D. Fla. 2003); *United States v. Bin Laden*, 58 F. Supp. 2d 113, 118 (S.D.N.Y. 1999).  Defense counsel retorts that the requirement that he undergo a security clearance in order to view CIPA-filed information violates his right to privacy. (Doc 59) Several courts have held that a defense counsel's right to privacy is trumped by the Government's need to protect classified information for the safety of the country. *See, e.g., Al-Arian,* 267 F. Supp. 2d 1258, 1266 (M.D. Fla. 2003) ("In this case, counsel's right to confidentiality is weighed against the United States' interest in protecting classified information.").  In a case of this magnitude, the intrusion on defense counsel's private

affairs is minimal in comparison to the national security issues implicated in this case.  Thus, Defendant's Motions to Exclude CIPA material is **DENIED**.  If defense counsel wishes to view the CIPA materials, he must submit to an FBI background check as required under CIPA.

Defendant also requests that this Court suppress any evidence/discovery obtained under FISA because FISA violates the Fourth, Fifth, and Sixth Amendments.  The Government retorts that it will not introduce any evidence obtained under surveillance authorized by FISA. As such, Defendant's request is **MOOT**.

**R.     Defendant's Motion for Attorney-Conducted Voir Dire and for Use of a Jury Questionnaire [Doc. 182]**

Defendant requests that this Court permit attorney-conducted voir dire.  The Government does not oppose, to the extent such voir dire conforms with the general practice of this Court. This Court has complete discretion to decide the scope and method of inquiry of the prospective jury panel during voir dire.  "Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981); *see also United States v. Anderson*, 562 F.2d 394, 397-398 (6th Cir.1977).  Thus, it is in this Court's discretion to conduct the entire voir dire or to permit individual inquiry.

Generally, this Court permits counsel for the parties to participate in the voir dire by posing reasonable questions to the jury panel as a whole after the Court has completed its initial questioning. Sensitive issues concerning pretrial publicity and the like are typically addressed in an individual voir dire at sidebar.  Reasonable requests for such sidebar questioning are liberally granted by this Court.  This Court will provide further instruction concerning voir dire at the Final Pretrial Conference on July 27, 2007.

65

Defendant also requests that the Court submit a 27-page questionnaire to each prospective juror prior to trial. The Government objects to the questionnaire as drafted by Defendant.  It is the practice of this Court to provide a standard juror questionnaire in all non-capital criminal cases; such questionnaires have already been provided to prospective jurors and will be available for counsels' review before voir dire begins.  These questionnaires provide sufficient information to empanel a fair and impartial jury when used in conjunction with the in-court voir dire process customarily followed by this Court.

Therefore, to the extent Defendant's Motion requests procedures that do not conform to the general practices of this Court, his Motion is **DENIED.**

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: July 23, 2007**